THE STATE OF MISSOURI, Respondent, v. WILLIAM H. MILLER. Appellant.

1. *Constitution, section 32, article 4, mandatory.*— Section 32, article 4, of the constitution, which declares that "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title," is equally obligatory and mandatory with any other provision thereof; and where a law is clearly and palpably in opposition to it, there is no other alternative but to pronounce it invalid.

2. *Act to prevent issue of false receipts, etc., constitutionality of.— Section 32, article 4, of constitution.*— The act entitled "An act to prevent the issue of false receipts or bills of lading, and to punish fraudulent transfers of property by warehousemen, wharfingers, and others," is sufficiently in conformity with

section 32, article 4, of the State constitution. The act shows clearly that its object was to strike at a whole class of cases, and remedy an existing evil; and while warehousemen and wharfingers are enumerated in the title, "others" are spoken of, and the provisions of the act treat of subjects which have a natural connection.

*Appeal from St. Louis Court of Criminal Correction.*

*Hart & Peacock*, for appellant.

The indictment is framed under a section of a law which is unconstitutional and void, because, 1st, it treats of two subject-matters; 2d, the particular subject-matter treated in it is not mentioned in its title; 3d, nor is such subject-matter germain to that mentioned in the title of the act, which treats of transfers to bailees, and not sales to vendees. (Const. Mo., art. 4, § 32; State *ex rel.* Hixon v. Schofield *et al.*, 41 Mo. 39.) The act relates to a class of offenses of a kindred character, all relating to trusts in matters of trade and commerce. These trusts may differ in species, but in their general nature they harmonize and agree.

WAGNER, Judge, delivered the opinion of the court.

At the November term, 1868, of the St. Louis Criminal Court, the appellant was indicted upon the charge of violating the provisions of the thirteenth section of "an act to prevent the issue of false receipts or bills of lading, and to punish fraudulent transfers of property by warehousemen, wharfingers, and others." The section alluded to is as follows: "Whosoever shall purchase any goods, wares, and merchandise, or other commodity, for cash, and shall sell, hypothecate, or pledge the same to another, and use the proceeds thereof for any purpose other than the payment of the seller or vendor, with intent to cheat or defraud such seller or vendor, or who shall conceal, ship, or otherwise make way with, or deliver to another, any goods, wares, merchandise, or other commodities so purchased, without paying for the same, with the intent to cheat or defraud the seller or vendor thereof, shall be deemed guilty of a felony, and, upon conviction thereof, shall be punished by a fine not exceeding five

thousand dollars, or by imprisonment in the penitentiary for a term not exceeding five years, or by both such fine and imprisonment." (Acts 1868, p. 13, § 13.; 1 Wagn. Stat. 221, § 12.)

There were four counts in the indictment. The first count charged that on the 8th day of August, 1868, the appellant purchased one thousand sacks of corn, of the value of $2,500, of John M. Gilkeson and James L. Sloss, for cash, and, with intent to cheat and defraud said Gilkeson and Sloss, unlawfully and feloniously sold the same and used the proceeds thereof for a purpose other than the payment of the sellers and vendors. The second count charged that he hypothecated the corn so purchased, and used the proceeds thereof for a purpose other than the payment of the sellers and vendors. The third count charged that he delivered said corn to another without paying for the same, and the fourth count charged that he shipped the same without paying therefor. There being no evidence to support the fourth count, it was withdrawn; and after hearing the evidence the jury returned a verdict against the defendant of guilty of felony, as charged in the first, second, and third counts of the indictment, and assessed his punishment at a fine of two thousand dollars.

The verdict was amply sustained by the evidence, and there is no reason for reviewing or commenting on the instructions of the court, as in my judgment they are unexceptionable. But there is one question on which I have had serious doubts, and that is the constitutionality of the law as applied to this case. This is really the only point in the case requiring serious consideration. It involves a construction of section 32, article 4, of the constitution of this State, which declares that "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title." This provision has of late been several times before this court. The courts in all the States where a like or similar provision exists have given it a very liberal interpretation, and have endeavored to construe it so as not to limit or cripple legislative enactments any further than what was necessary by the absolute requirements of the law. An exact and strict compliance with the letter would render legislation

32—VOL. XLV.

almost impracticable, and would lead to a multiplicity of bills which would make our statutes ridiculous. The principle is a correct one, and the intention was good; it was designed to strike down a most vicious and corrupt system which prevailed in our legislative bodies, and which operated as a surprise, and was productive of fraud and plunder. It was intended to kill "log-rolling" and prevent unscrupulous, designing men and interested parties from dexterously inserting matters in the body of a bill, of which the title gave no intimation of the true character, or of comprising subjects diverse and antagonistic in their nature, in order to combine in its support members who were in favor of a particular measure, but who could not carry their object without an agreement to go for some other measure, when neither, on its own merits, could command the requisite majority.

In California and Ohio it has been held that the constitutional provision was merely directory, and that, if it was disregarded by the Legislature, its violation would not render the law void. But we take a different view of the subject, and consider it equally obligatory and mandatory with any other provision in the constitution; and where a law is clearly and palpably in opposition to it, there is no other alternative but to pronounce it invalid.

The ruling of this court has heretofore been that if the matters embraced in the bill were congruous and had a legitimate connection or relation to each other, the generality of the title would not make it objectionable. (City of St. Louis v. Tiefel, 45 Mo. 578; State v. Mathews, 44 Mo. 523; State v. The Bank, etc., *post*, p. 528.) Where the constitution declared that "no private or local bill which may be passed by the Legislature shall embrace more than one subject, and that shall be expressed in the title," it was held that the character of the act was to be determined by its provisions, and not by its title; and general provisions were not rendered void by reason of their being contained in the same act with other provisions of merely local application, though the title of the act referred to the latter provisions only. (The People v. McCann, 16 N. Y. 58.) So, in another case, the court said: "There must be but one subject; but the mode in which the subject is treated, and the reasons

which influenced the Legislature, can not and need not be stated in the title, according to the letter and spirit of the constitution." (Sun Mutual Ins. Co; v. The Mayor, 4 Seld. 241.) In the case of O'Leary v. County of Cook, 28 Ill. 534, it was decided that a provision in an act incorporating a college, prohibiting the sale of ardent spirits within a distance of four miles; although no such object or subject was named in the title of the bill, was not unconstitutional; that such a provision in a law incorporating a college was so germain to the primary object of the charter as not to conflict with the constitution, which declared that no law should embrace more than one subject, which should be expressed in the title. The same position was assumed by this court in St. Louis v. Tiefel, and State v. Matthews, as above cited.

The Supreme Court of Louisiana says it is improper to give this provision " too vigorous and technical a construction." If in applying it we should follow the rules of a nice and fastidious verbal criticism, we should often frustrate the action of the Legislature, without fulfilling the intention of the framers of the constitution; and so it has been said that an act entitled an act to "provide a homestead for widows and children," was good, though in fact the statute only provided the pecuniary means sufficient to purchase a homestead. (Succession of Lanzetti, 9 La. Ann. 329.)

Now, the nature and object of the act is clearly defined in the title. It is to prevent the issue of false receipts or bills of lading, and to punish fraudulent transfers of property by warehousemen, wharfingers, and others. The act, though penal, is highly meritorious. It was intended to subserve a good purpose — to promote honesty and prevent fraud. By a fair construction, it relates to a class of offenses of a kindred character, all connected, blended, and germain. It was designed to prohibit all persons who obtained the possession of goods, and had the *indicia* of ownership, from transferring, hypothecating, or pledging them, in fraud of the rights of the seller or vendor.

The act shows clearly that its object and aim was to strike at a whole class of cases, and remedy an existing evil; and whilst warehousemen and wharfingers are specifically enumerated in the

title, others are spoken of, and the provisions of the act treat of subjects which have a natural connection. A glance at the title would naturally show what was to be found in the law. A title more definite and comprehensive might easily have been framed; but, as it is, it is not so plainly defective as to authorize this court to declare the law unconstitutional.

Judgment affirmed. The other judges concur.