Richard CARMACK, d/b/a Carmack Elk Farm, individually and as agent for Diane Carmack, et al., Appellants,

v.

DIRECTOR, MISSOURI DEPARTMENT OF AGRICULTURE, et al., Respondents.

No. 79644.

Supreme Court of Missouri, En Banc.

May 27, 1997.

Gwendolyn S. Froeschner, Columbia, for Appellants.

Jeremiah W. (Jay) Nixon, Attorney General, Karen King Mitchell, Christine A. Kincannon, Assistant Attorneys General, Jefferson City, for Respondents.

ROBERTSON, Judge.

"No bill shall contain more than one subject which shall be clearly expressed in its title....." Mo. Const. art. III, sec. 23 ("section 23"). In this case we consider whether the general assembly violated section 23 when a bill bearing the title "relating to economic development" contained, among its 102 statutory amendments or additions, amendments to section 267.610, RSMo, changing the indemnification paid to owners upon the destruction of their livestock carrying highly contagious or communicable or infectious disease.

We have jurisdiction. Mo. Const. art. V, sec. 3. We conclude that the general assembly's passage of Conference Committee Substitute for Senate Committee Substitute for House Committee Substitute for House Bill 566 violated section 23 in that the bill contained more than one subject. We, therefore, hold that the amendment to section 267.610 contained in C.C.S.S.C.S.H.C.S.H.B. 566 is void. The judgment of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

## I.

### A.

Richard Carmack is a part owner of Carmack Elk Farm in Howard County. As the name suggests, Carmack and his partners raise elk there, and have since 1990, when they first imported elk from Canada. The elk were initially tested and certified disease free at the time Carmack acquired them. However, word reached the state veterinarian that tuberculosis had infected the Canadian herd from which Carmack obtained his elk. The state veterinarian tested the Carmack elk, and several animals tested positive for bovine tuberculosis. For a more complete discussion of the facts pertaining to the tuberculosis discovery, *see Carmack v. Saunders*, 884 S.W.2d 394 (Mo.App.1994). The state veterinarian initially determined it necessary to order the slaughter of six elk to contain the tuberculosis. Prior to January 1, 1993, and pursuant to the state veterinarian's order, seven elk were destroyed, one by mistake. Despite a contentious process, the state ultimately reimbursed Carmack the actual value of the elk—$7,650.58 each. After January 1, 1993, more of Carmack's elk contracted tuberculosis and, ultimately, a total of forty-six elk met their death on the state veterinarian's order.

C.C.S.S.C.S.H.C.S.H.B. 566 amended, among many other statutes, section 267.610. The governor approved the legislation on June 29, 1993. The new legislation changed the rate of compensation paid to owners of livestock slaughtered by the state veterinarian to prevent the spread of disease. That

statutory change, effective January 1, 1993, by its express terms, is at the nub of this case. Carmack prefers the previous indemnification formula, which based indemnification on the actual value of the animals destroyed; the state prefers the less expensive, new indemnification, which bases indemnification on pre-determined values for various animals set by regulation of the department of agriculture and which limits total indemnification payable to legislative appropriations for that purpose. To achieve his preference, Carmack claims that the general assembly passed the amendment to section 267.610 as part of a bill that violated section 23.

## B.

When originally introduced for consideration by the members of the general assembly, House Bill 566 (the original bill will be described as "House Bill 566") proposed repeal of twelve statutory sections "relating to economic development" and proposed enacting seventeen new sections "in lieu thereof." The original, officially-printed bill consisted of twenty-three full pages of text and eleven words on a twenty-fourth page and: (1) required the governor's budget message to include a cost-benefit analysis of various state tax expenditures specifically directed to tax-incentive programs administered by the department of economic development; (2) required the highway and transportation department to develop a plan "to modernize the state's transportation system;" (3) authorized the governor to establish and provided guidelines for the operation of a private Missouri Business Modernization and Technology Corporation to replace the Corporation for Science and Technology to work in conjunction with the department of economic development; (4) permitted the Small Business Assistance Office to establish regional offices under the direction of the department of economic development; (5) created and defined the authority of the Missouri Business Modernization and Sudden Response Job Retention Teams within the department of economic development; and (6) created a "new jobs" revolving fund administered by the department of economic development.

When finally passed, C.C.S.S.C.-S.H.C.S.H.B. 566 ("H.B.566") repealed 88 statutory sections "relating to economic development" and enacted 102 new sections "relating to the same subject." The bill covered nearly 179 full pages of text. The 102 new sections amended laws in 25 statutory chapters:

Chapter 30   State Treasurer, Linked Deposits, Farm Assistance

Chapter 32   State Department of Revenue, Neighborhood Assistance Act

Chapter 33   State Financial Administration, Minority Business Development Commission

Chapter 71   Provisions Relative to all Cities and Towns, General Provisions

Chapter 99   Municipal Housing, Real Property Tax Increment Allocation, Redevelopment

Chapter 100   Industrial Development, Development Finance Board

Chapter 108   Bond Issues, Miscellaneous Provisions

Chapter 135   Tax Relief, Credit for New or Expanded Business Facility

Chapter 173   Department of Higher Education Scholarship Program

Chapter 178   Special Schools and Instructions and Special Districts

Chapter   186   Advisory   Commissions, Committees   and   Councils, Missouri Council on Women's Economic Development and Training

Chapter 215   State Housing

Chapter 226   State Highway and Transportation Department

Chapter 262   Promotion of Agriculture and Horticulture

Chapter 265   Standardization, Inspection and Marketing of Agricultural Products, Meat Inspection

Chapter   267   State   Veterinarian—Diseased Animals

Chapter 277   Missouri Livestock Marketing Law

Chapter 348   Authorities and Corporations for Economic and Technological Development, Small Business, Missouri Technology Corporation

Chapter 350  Farming Corporations

Chapter 353  Urban Development Corporation Law

Chapter 362  Banks and Trust Companies

Chapter 442  Titles and Conveyance of Real Estate

Chapter 447  Lost and Unclaimed Property

Chapter 620  Department of Economic Development

Chapter 644  Water Pollution

## II.

### A.

■ Carmack claims that H.B. 566 violates section 23. Section 23 is a procedural requirement imposed by the people in the constitution to limit the manner in which the legislature may pass legislation. At the outset of our discussion of this issue, we recite again the clear rules that have bridled this Court's review of procedural challenges to legislation passed by the general assembly and approved by the governor. An act of the legislature carries a strong presumption of constitutionality. *Hammerschmidt v. Boone County*, 877 S.W.2d 98, 102 (Mo. banc 1994). This Court resolves all doubts in favor of the procedural and substantive validity of legislative acts. *Id.* Attacks against legislative action founded on constitutionally imposed procedural limitations are not favored. *Id.* An act of the legislature must clearly and undoubtedly violate a *constitutional procedural limitation* before this Court will hold it unconstitutional. *Id.* Finally, we will attempt to avoid an interpretation of the Constitution that "will limit or cripple legislative enactments any further than what was necessary by the absolute requirements of the law." *State v. Miller*, 45 Mo. 495, 497 (1870).

■ In the part of section 23 pertinent here, the *constitution imposes two distinct* limitations on the procedures by which the general assembly may pass legislation: (1) A bill cannot contain more than one subject and (2) the subject of the bill "shall be clearly expressed in its title." Section 23 is a mandatory, not directory, constitutional provision. *Miller*, 45 Mo. at 498. It has been a part of every Missouri constitution since 1865. Mo. Const. art IV, sec. XXXII (1865).

In *Hammerschmidt*, this Court considered legislation ultimately found to violate the "one subject" provision of section 23. We said there that "[t]o the extent the bill's original purpose is properly expressed in the title to the bill, we need not look beyond the title to determine the bill's subject." *Id.* at 102. We remarked parenthetically, however, that "[a]morphous titles that are too broad to inform the public and the legislature of the subject of the bill present serious, but different, constitutional problems....." *Id.* at 102, n. 3.

■ As previously indicated, *Hammerschmidt* directs that we look first to the title of H.B. 566 to determine its subject. The title of H.B. 566 includes reference to specific statutory sections and describes the bill as "relating to economic development."

Carmack urges that the description of the subject contained in the title to H.B. 566—"relating to economic development"—cannot include a law determining the compensation due livestock owners when the state destroys their livestock to protect other livestock from disease without violating section 23. Carmack says that "economic development" means "to bring out the capabilities or possibilities of the production, distribution and use of income and wealth." App. Br. at 17, quoting (without more accurate citation) The American College Dictionary definitions of "economic" and "development." He concludes that the phrase "economic development" does not include laws relating to the indemnification of owners of livestock destroyed by the state to prevent the spread of disease as this activity does not develop the economy, but merely maintains the economy.

The state disagrees, claiming that "economic development" is a sufficiently broad subject to include the livestock indemnification provisions contained in section 267.610. According to the state's argument, "economic development" consists of any activity "that promotes and protects an important sector of the Missouri economy." Resp. Br. at 20. The state suggests that section 267.610 promotes the state's livestock industry "by making participation less risky to the individual

farmer." *Id.* at 22. Section 267.610 protects the livestock industry by "ridding the state of diseased animals." *Id.* at 21. Each of the state's proposed definitions permits "economic development" to sweep within its meaning any direct or indirect benefit that flows to the state's economy.

■ While Carmack's argument is too narrow, the state's argument proves too much. Under the state's proposed definition, economic development includes any activity that indirectly promotes or protects portions of the Missouri economy, nearly every activity the state undertakes falls within the meaning of economic development. Tax increases for education create better employees for the state's industries. The same argument applies to increasing math proficiency requirements for high school completion. Improvements in highways permit goods to flow more easily to the state's factories and places of retail commerce. Increased speed limits permit those goods to arrive more quickly; lower speed limits protect commerce from accidents. More stringent criminal laws (or so the argument goes) make our cities more safe and, therefore, more attractive to businesses that might wish to locate in Missouri. General tax cuts or increases (depending on one's perspective) alter the business climate for the better and, therefore, develop the economy. Changes in statutes relating to the venue of civil actions make certain areas of the state more or less attractive to industry. Laws requiring a state geological survey provide a basis for mining interests to consider employing Missouri's workers. Proponents of pay increases go so far as to claim that the higher quality of persons who will seek state office because of the increased pay will make the state more attractive to industry. Perhaps the point is made by now. We conclude that the words "economic development" are too broad and amorphous to describe the subject of a pending bill with the precision necessary to provide notice of its contents.

If Carmack had claimed that the title to H.B. 566 violated the "clear title" mandate, we would consider that issue. We need not reach that issue, however. In his brief and in response to a direct question from the bench during oral argument, Carmack expressly denied making a claim that the title "relating to economic development" is too broad *per se* to provide the notice section 23 requires to the people and the members of the legislature. Given the self-imposed limits of Carmack's argument, this case is a "one subject" case, not a "clear title" case.

■ Where an amorphous title to a bill renders its subject uncertain, but the party challenging the bill claims a "one subject" violation and not a "clear title" violation of section 23, the Court may determine the subject of the bill from two sources. First, the constitution itself is organized around subjects to which we can refer in determining the meaning of the single subject requirement. *Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824, 831 (Mo. banc 1990); *Hammerschmidt,* 877 S.W.2d at 102, n. 3. Second, the Court may examine the contents of the bill originally filed to determine its subject.

■ The constitution contains a section entitled "economic development." Mo. Const. art. IV, sec. 36(a); 1994 Mo.Rev.Stat. 8286. That section deals exclusively with the department of economic development and requires the department to

> *administer all programs* provided by law relating to the promotion of the economy of the state, the economic development of the state, trade and business, and other activities and programs impacting on the economy of the state.

(Emphasis added.) The "administer all programs" language is significant. A program administered by an agency other than the department of economic development is not an economic development program within the meaning of the constitution.

This conclusion as to the scope of the subject "economic development" is consistent with the second source to which we refer in determining a bill's subject—its content as originally filed. As originally filed, five of the six changes in the law proposed by House Bill 566 relate to programs administered by the department of economic development.

From article IV, section 36(a) and the original language of House Bill 566, it is beyond doubt that the bill's primary, core subject is laws relating to economic development programs administered by the department of economic development. To the extent that H.B. 566 amends or adopts laws affecting programs administered by other executive departments, the bill contains more than one subject.

The state veterinarian is an employee of the department of agriculture. Section 267.020, RSMo 1994. Section 267.610, which H.B. 566 purports to amend, is part of sections 267.560—267.660, RSMo 1994, the "Livestock Disease Control and Eradication Law." Department of agriculture regulations determine the indemnification amount. Section 267.610. Chapter 267 deals with the state veterinarian and is part of Title XVII of the statutes, designated by the revisor of statutes as "Agriculture and Animals."

The amendment to section 267.610 contained in H.B. 566 does not relate to any program administered by the department of economic development; it addresses programs administered by the department of agriculture. The amendments to section 267.610 contained in H.B. 566, therefore, address a different subject than a bill described as "relating to economic development." By adopting a bill that contains more than one subject, the general assembly violated section 23.

■ When a bill violates the "one subject" provision of section 23, *Hammer-schmidt* teaches that the entire bill is unconstitutional "unless the Court is convinced beyond a reasonable doubt that one of the bill's multiple subjects is its original, controlling purpose and that the other subjects are not." *Id.* at 103. Where the Court is convinced "that the bill contains a 'single, central purpose,' [citation omitted], we will sever that portion of the bill containing the additional subject(s) and permit the bill to stand with its primary, core subject intact." *Id.*

■ We have determined that the primary, core subject of H.B. 566 is laws relating to programs administered by the department of economic development. Applying section 1.140, RSMo 1994, which requires the Court to sever unconstitutional provisions of statutes where possible, and *Hammer-schmidt*, we hold that the amendment to section 267.610 contained in H.B. 566 may be severed from the unchallenged portions of the bill.

### C.

To summarize: We hold that the amendment to section 267.610 contained in H.B. 566 addresses a different subject than the primary, core subject of the bill in violation of article III, section 23 of the Missouri Constitution. We further hold that the amendments to section 267.610 are severable from the unchallenged portions of the bill.

### III.

The judgment of the trial court is reversed and the cause remanded for such further proceedings consistent with this opinion.

All concur.