**CORVERA ABATEMENT TECH-NOLOGIES, INC., Respondent/ Cross–Appellant,**

v.

**AIR CONSERVATION COMMISSION and Missouri Department of Natural Resources, Appellants/ Cross–Respondents.**

No. 80570.

Supreme Court of Missouri, En Banc.

July 14, 1998.

Rehearing Denied Aug. 25, 1998.

1. All statutory references are to RSMo 1994 unless otherwise indicated.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen Mitchell, Timothy P. Duggan, Asst. Attys. Gen., Jefferson City, for Appellants.

Stephen G. Jeffrey, Edward A. Cohen, Fernando Bermudez, Christopher N. Bolinger, St. Louis, for Respondents.

John R. Barsanti, Jr., Richard L. Waters, Julie A. Emmerich, Frank L. Pellegrini, St. Louis, for Amicus Curiae.

COVINGTON, Judge.

In 1994, the Air Conservation Commission of the State of Missouri ("Commission") promulgated 10 CSR 10–6.240, a regulation concerning asbestos abatement projects. The Commission then issued notices of violation of 10 CSR 10–6.240 to Corvera Abatement Technologies, Inc. ("Corvera"), a business involved in the removal of asbestos. On July 15, 1997, Corvera filed a ten count petition for declaratory and injunctive relief against the Commission and the Missouri Department of Natural Resources ("Department"). Corvera sought to have 10 CSR 10–6.240 declared void and to enjoin the Commission from enforcing the rule. The trial court entered summary judgment for Corvera on two counts and summary judgment for the Commission on two counts. The trial court dismissed the remaining counts without prejudice. The parties appeal the trial court's entry of summary judgment. The Commission and the Department appeal from the trial court's holding that 10 CSR 10–6.240 is void because sections 536.200.5 and 536.205.4,[1] violate the Constitution of Missouri under article I, section 13 (prohibiting

retrospective legislation) and article II, section 1 (regarding separation of powers among three departments of government). The Commission and Department also appeal from the trial court's holding that 10 CSR 10–6.240 is invalid to the extent that it conflicts with section 643.055.1, by imposing standards that are more strict than federal law. Corvera cross-appeals, asserting that the trial court erred in denying Corvera's claim that 10 CSR 10–6.240 is void under section 536.021.2(2), RSMo Supp.1997, for failure to cite the correct legal authority in its notice of proposed rulemaking and in denying Corvera's clear title and single subject challenge under article III, section 23, of the Missouri Constitution. Because this case involves the validity of a state statute, this Court has jurisdiction. Mo. Const. art. V, section 3. The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

## I.

■ The first issue is whether the trial court erred in declaring that the notice of proposed rulemaking for 10 CSR 10–6.240 did not violate the Missouri Administrative Procedure Act (MAPA) section 536.021.2(2), RSMo Supp.1997. Although raised not on direct appeal but on cross-appeal, it is a threshold issue in this case.

MAPA establishes procedural requirements that administrative agencies must follow to promulgate regulations. Section 536.021, RSMo Supp.1997, requires that administrative agencies file a notice of proposed rulemaking with the Secretary of State. The notice of proposed rulemaking provides notice to affected parties "to allow opportunity for comment by supporters or opponents of the measure, and so to induce a modification." *Missouri Hospital Ass'n v. Air Conservation Comm'n*, 874 S.W.2d 380, 391 (Mo. App.1994). One of the elements of the required notice of proposed rulemaking is notice of "the legal authority upon which the proposed rule is based." Sec. 536.021.2(2),

---

1. All references are to RSMo 1994 unless otherwise indicated.

RSMo Supp.1997. Section 536.021.2(2), RSMo Supp.1997, is designed to provide notice to affected parties that the agency has the power to promulgate the proposed rule. *See NME Hospitals, Inc. v. Department of Social Servs.*, 850 S.W.2d 71, 74 (Mo. banc 1993).

In the instant case, the Commission cited its general enabling statute, section 643.050, RSMo Supp.1992, in the notice of proposed rulemaking as authority to promulgate 10 CSR 10–6.240. The parties stipulate, and this Court agrees, that section 643.225 would have been the more proper authority to cite because it specifically authorized the regulation of asbestos abatement projects. The issue raised by Corvera is whether the citation to section 643.050, RSMo Supp.1992, in the Commission's notice of proposed rulemaking satisfies the requirement of section 536.021.2(2), RSMo Supp.1997.

Section 643.050, RSMo Supp.1992, suffices as legal authority under section 536.021.2(2), RSMo Supp.1997, for promulgation of 10 CSR 10–6.240. It grants the Commission the authority to "adopt, promulgate, amend and repeal rules and regulations consistent with the general intent and purposes of sections 643.010 to 643.190 and titles V and VI of the federal clean air act." Sec. 643.050, RSMo Supp.1992. The general intent and purpose of sections 643.010 to 643.190 is to maintain the purity of the air resources of the state through regulating air contaminant sources. Sec. 643.030. The primary goal of the Federal Clean Air Act is to encourage reasonable federal, state, and local governmental actions for pollution prevention. *See generally,* 42 U.S.C. § 7401(c). Title V of the Federal Clean Air Act establishes a permitting scheme for operators of sources of air pollution. *See generally,* 42 U.S.C. § 7661. Title VI is designed to protect the ozone layer. *See generally,* 42 U.S.C. § 7671.

The rule promulgated by the Commission in this case, 10 CSR 10–6.240, regulates the manner in which asbestos containing materials are removed, encapsulated, or enclosed and regulates those who perform such asbestos abatement projects. Specifically, the rule controls the certification and training of asbestos contractors and places substantive restrictions on an asbestos abatement contractor's handling, transporting, cleaning, and demolishing of equipment, surfaces, and structures involved in asbestos abatement projects in an attempt to control the risk of asbestos contamination. Preventing possible asbestos contamination of Missouri's air resources in the course of conducting asbestos abatement projects is consistent with the general intent and purposes of sections 643.010 to 643.190 and titles V and VI of the Federal Clean Air Act. The citation to the broad grant of authority in section 643.050, RSMo Supp.1992, therefore, satisfies the requirement of section 536.021.2(2), RSMo Supp.1997. Nothing in section 643.050, RSMo Supp.1992, renders it invalid as "the legal authority upon which the proposed rule is based." Section 536.021.2(2), RSMo Supp. 1997.[2]

## II.

The Department and the Commission contend that the trial court erred in granting summary judgment in favor of Corvera on its claim that 10 CSR 10–6.240 is void because the Commission failed to file proper fiscal notes when the rule was proposed. The parties stipulate that the Commission failed to file proper fiscal notes as required by sections 536.200 and 536.205, RSMo Supp. 1992, at the time 10 CSR 10–6.240 was proposed in January of 1993. The parties additionally stipulate that sections 536.200 and 536.205, RSMo Supp.1992, provided, at that time, that rules that failed to comply with the fiscal note requirements were void. In 1994, the legislature amended sections 536.200 and 536.205, RSMo Supp.1992, by enacting sections 536.200.5 and 536.205.4 (the amendments), effective on June 3, 1994, to provide:

2. In finding that the requirements of section 536.021.2(2) have been satisfied in this case by the citation to section 643.050, RSMo Supp. 1992, this Court does not render the mandatory language of section 643.225 meaningless.

In the event that any rule published prior to June 3, 1994, shall have failed to provide a fiscal note as required by this section, such agencies shall publish the required fiscal note cross-referenced to the applicable rule prior to August 28, 1995, and in that event the rule shall not be void. Any such rule shall be deemed to have met the requirements of this section until that date.

Secs. 536.200.5 and 536.205.4. The Commission filed a corrected fiscal note for 10 CSR 10–6.240 on July 3, 1995. Thereafter, the Commission applied 10 CSR 10–6.240 to Corvera's asbestos abatement projects. In ruling on Corvera's petition for declaratory and injunctive relief, the trial court declared the amendments unconstitutional as retrospective laws under article I, section 13 and as violative of the separation of powers requirement of article II, section 1 of the Missouri Constitution.

■ Article I, section 13 of the Missouri Constitution provides that "no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities can be enacted." A retrospective law is a law that imposes a new obligation, duty, or disability with respect to a past transaction or that takes away or impairs a vested or substantial right. *See Beatty v. State Tax Comm'n,* 912 S.W.2d 492, 496 (Mo. banc 1995); *Doe v. Roman Catholic Diocese,* 862 S.W.2d 338, 340 (Mo. banc 1993).

■ As applied to Corvera, the amendments are not retrospective laws. The amendments were enacted into law in 1994. Pursuant to the statutory mandate, the Commission published corrected fiscal notes for 10 CSR 10–6.240 in 1995. The Commission applied 10 CSR 10–6.240 to Corvera only as to acts that occurred after the amendment of the statute and the publication of the corrected fiscal note. Because Corvera challenged only the application of 10 CSR 10–6.240 to its alleged transgressions of the rule that occurred after the amendments were enacted, the amendments did not affect any of Corvera's past transactions, but operated only prospectively.

Corvera argues, however, that it had a vested right to be free from enforcement of 10 CSR 10–6.240 because the rule was void as violative of sections 536.200 and 536.205, RSMo Supp.1992, and that the amendment of these sections impaired that right. Corvera's argument is flawed. It is axiomatic that any right Corvera had to be free from the enforcement of 10 CSR 10–6.240 based on the rule's violation of sections 536.200 and 536.205, RSMo Supp.1992, existed for only so long as the rule violated the requirements of these sections. Once the requirements of these sections changed and the agency complied with the amended laws, Corvera no longer had this right to be free from the rule's enforcement for activities occurring after the amended laws were enacted. Corvera, of course, had no vested right to insist that the requirements of sections 536.200 and 536.205, RSMo Supp.1992, remain unchanged. *Beatty,* 912 S.W.2d at 496 (noting rule that neither persons nor entities have vested right to insist that a law remain unchanged); *Fisher v. Reorganized School Dist. No. R–V,* 567 S.W.2d 647, 649 (Mo. banc 1978)(same). Because 10 CSR 10–6.240 was applied to actions taken by Corvera only after the enactment of the amendments and the issuance of the corrected fiscal notes, the amendments do not constitute retrospective laws.

## III.

Corvera contends that in enacting the amendments the general assembly impermissibly exercised executive power and impermissibly delegated judicial power, violating the separation of powers mandate of article II, section 1 of the Missouri Constitution. Corvera first argues that these amendments constitute a legislative promulgation, or re-promulgation, of agency rules in that they attempt to revive or to correct an otherwise void rule. *See Missouri Coalition v. Joint Committee on Administrative Rules,* 948 S.W.2d 125, 133–34 (Mo. banc 1997)(holding

that legislature improperly exercised executive rulemaking power).

The amendments provide that an agency must publish corrected fiscal notes for any rules for which the agency failed to publish a fiscal note in the manner required by sections 536.200 and 536.205, RSMo Supp.1992, and that "in that event the rule shall not be void." Secs. 536.200.5, 536.205.4. The amendments also state, "Any such rule shall be deemed to have met the requirements of this section until that date." Secs. 536.200.5, 536.205.4. Because 10 CSR 10–6.240 was applied to Corvera only after the Commission published the corrected fiscal notes on July 3, 1995, this Court need not consider whether the legislature could mandate that this rule "shall be deemed to have met the requirements of this section until that date." Instead, this Court need address only whether the legislature improperly exercised executive power by requiring the Commission to file a corrected fiscal note and declaring that rules with corrected fiscal notes shall not be void.

■ As Corvera suggests, the amendments, as applied in this case, do attempt to correct invalid rules; however, they do so by exercising legislative, not executive, power. This Court recently addressed the extent to which the legislature can control executive rulemaking in *Missouri Coalition v. Joint Committee on Administrative Rules*, 948 S.W.2d at 133–34 (Mo. banc 1997). In that case, this Court stated, "Promulgation of rules and regulations is an executive function. . . . The legislature may not unilaterally control execution of rulemaking authority after its delegation of rulemaking power, regardless of whether it does so by suspension, revocation, or prior approval of administrative rules. *It may, of course, attempt to control the executive branch by passing amendatory or supplemental legislation and presenting such legislation to the governor for signature or veto,* or by the power of appropriation." *Id.*(emphasis added); *see also Bowsher v. Synar,* 478 U.S. 714, 733–34, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986)(stating "once Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectly—by passing new legislation"). By passing amendatory legislation that directs executive agencies to correct improper fiscal notes, the legislature did not usurp executive power in enacting the amendments.

■ Corvera next asserts that the amendments violate the separation of powers mandate of article II, section 1 because these sections confer a judicial function upon executive agencies by "empowering an agency to interpret and apply the fiscal note statutes to determine whether a particular fiscal note prepared for a particular rule complies with the fiscal note statutes." This argument is without merit. The separation of powers mandate is primarily concerned with separating the powers constitutionally assigned to one department of government, not with prohibiting one department from exercising the functions normally associated with another. *See Chastain v. Chastain,* 932 S.W.2d 396, 398 (Mo. banc 1996); *Asbury v. Lombardi,* 846 S.W.2d 196, 200 (Mo. banc 1993). "The authority that the constitution places exclusively in the judicial department has at least two components—judicial review and the power of courts to decide issues and pronounce and enforce judgments." *Chastain,* 932 S.W.2d at 399. By authorizing executive agencies to ascertain whether they failed to comply with statutory directives and to correct any errors, the legislature in no way usurped power reserved for the judiciary under article II, section 1 of the Missouri Constitution. *See id.* at 399 (finding no improper executive exercise of judicial power because agency could neither conduct judicial review nor pronounce and enforce judgment); *Barber v. Jackson County Ethics Comm'n,* 935 S.W.2d 62, 65 (Mo.App.1996)(stating that agency can apply the law to the facts "[s]o long as the agency does not attempt to pronounce a judgment and carry it into effect"). This Court holds that the amendments do not violate the separation of powers requirement of article II, section 1.

## IV.

The next issue is whether section 643.055.1, as amended, bars 10 CSR 10–6.240 because the rule is more strict than federally imposed standards and guidelines for asbestos abatement projects. The parties agree that the United States Environmental Protection Agency ("EPA") has adopted regulations at 40 CFR Part 61, Subpart M, which impose requirements on asbestos abatement in demolition projects and that the requirements of 10 CSR 10–6.240 are more strict than the federal regulations. The parties also stipulate that the state regulation is broader than the federal regulations in that the state rule applies to projects involving at least 10 square feet or 16 linear feet of asbestos-containing material, whereas the federal regulation applies to projects of at least 160 square or 260 linear feet.

In 1979, the general assembly enacted the "no stricter than" provision of section 643.055.1. Section 643.055.1, amended in 1992 and 1994,[3] reads in pertinent

part as follows:

> Other provisions of law notwithstanding, the Missouri air conservation commission shall have the authority to promulgate rules and regulations, pursuant to Chapter 536, RSMo, to establish standards and guidelines to ensure that the state of Missouri is in compliance with the provisions of the federal Clean Air Act, as amended (42 U.S.C. Section 7401, *et seq.*) The standards and guidelines so established shall not be any stricter than those required under the provisions of federal Clean Air Act, as amended; nor shall those standards and guidelines be enforced in any area of the state prior to the time required by the federal Clean Air Act, as amended.

In 1989, the general assembly passed sections 643.020(12) and 643.225 to 643.250, which regulate asbestos abatement projects containing at least 10 square feet or 16 linear feet of asbestos-containing material. In 1992, the legislature re-enacted the "no stricter than" provision in section 643.055.1. In late 1992, the Commission proposed 10 CSR 10–6.240. At that time, the EPA thresholds were, and they remain, 160 square feet or 260 linear feet of asbestos-containing material. In 1994, the legislature re-enacted the "no stricter than" provision in section 643.055.1.

▆▆▆ The trial court correctly determined that section 643.055.1 prohibits the Commission from promulgating rules that are more strict than federal regulations under the Federal Clean Air Act. The language of the section is plain. The Commission may not promulgate standards and guidelines any stricter than those required under the provisions of the Federal Clean Air Act. Section 643.055.1; *Missouri Hospital Ass'n v. Air Conservation Comm'n,* 874 S.W.2d 380, 396 (Mo.App.1994). It is without cavil that where statutory language is clear, unambiguous, and admits of only one meaning, there is no room for construction and the legislature is presumed to have intended what the statute says. *State ex rel. Missouri State Board of Registration for Healing Arts v. Southworth,* 704 S.W.2d 219, 224 (Mo. banc 1986). According to its plain language, therefore, the Commission may not establish regulatory standards that are more strict than the federal regulations under the Clean Air Act.

The Commission and the Department claim that the rule is not barred because it is authorized by more specific statutory sec-

---

**3.** Section 643.055.1 was amended in 1992 to add the language "as amended" after the references to the Clean Air Act. In the 1994 amendment, the following two sentences were added to section 643.055.1:

> The restrictions of this section shall not apply to the parts of a state implementation plan developed by the commission to bring a nonattainment area into compliance and to maintain compliance when needed to have a United

States Environmental Protection Agency approved state implementation plan. The determination of which parts of a state implementation plan are not subject to the restriction of this section shall be based upon specific findings of fact by the air conservation commission as to the rules, regulations and criteria that are needed to have a United States Environmental Protection Agency approved plan.

tions including sections 643.020(12),[4] 643.253(2),[5] and 643.225–643.250 [6] that impose on all asbestos abatement projects requirements that are broader and more strict than federal standards. Specifically, the Department and Commission assert that the rule reflects the requirements of sections 643.020(12), 643.253(2), and 643.225–643.250 which, respectively, define "asbestos abatement projects" to include projects smaller in scope than those covered by federal regulations and which establish for these projects some requirements that are more strict than federal regulations. Additionally, the Commission and Department assert, section 643.225 authorizes the Commission's special rulemaking authority for asbestos abatement projects specifically. That section begins as follows:

> The provisions of sections 643.225 to 643.250 shall apply to all asbestos abatement projects. The commission shall promulgate rules and regulations it deems necessary to implement and administer the provisions of sections 643.225 to 643.250, including requirements, procedures and standards relating to asbestos projects, as well as the authority to require corrective measures to be taken in asbestos abatement projects as are deemed necessary to protect public health and the environment. . . .

Sec. 643.225. The state asserts that sections 643.020(12), 643.253(2), and 643.225–643.250, when read together, authorize the Commission to adopt rules for asbestos projects that contain regulated asbestos above the threshold of 10 square feet or 16 linear feet. The state asserts that rules of statutory construction require that two statutory provisions be harmonized if at all possible, but, if there is

an irreconcilable conflict, the more specific controls. The state contends that because sections 643.020(12), 643.253(2), and 643.225–643.250 focus specifically on asbestos, those sections reflect the legislature's intent. The state asserts that the Commission, therefore, may disregard the limitation in section 643.055.1 and adopt asbestos rules more strict than the EPA rules that regulate asbestos.

The state's assertion disregards the first phrase of section 643.055.1. Section 643.055.1 begins, "Notwithstanding any other provisions of law. . . ." The initial phrase, if it is to be given any effect whatsoever, must be read to mean that section 643.055.1 controls and takes precedence over any other provisions that might otherwise appear to authorize the Commission to adopt "stricter than" rules. To "harmonize" the statutes as the state requests would render the introductory phrase of section 643.055.1 meaningless.

The state's assertion is also flawed because a conflict exists between section 643.055.1, prohibiting regulations containing provisions "stricter than" the federal requirements and sections 643.020(12), 643.253(2), and 643.225–643.250 defining and regulating asbestos abatement projects more stringently than the federal requirements. When two statutes conflict, the later enacted statute, even when there is no specific repealing clause, repeals the first statute to the extent of any conflict with the second. *County of Jefferson v. Quiktrip Corp.*, 912 S.W.2d 487, 490 (Mo. banc 1995). If the two laws are irreconcilable, the latter repeals the former. *Bartley v. Special School Dist.*, 649 S.W.2d 864, 867 (Mo. banc 1983). As the trial court found in this case, the timing of the legislative amendments in 1992 and 1994 to section

---

**4.** This section defines "asbestos abatement projects" as:

> ·an activity undertaken to encapsulate, enclose or remove ten square feet or sixteen linear feet or more of friable asbestos containing materials from buildings and other air contaminant sources, or to demolish buildings and other air contaminant sources containing ten square feet or sixteen linear feet or more.

**5.** This section provides the same definition as section 643.020(12) for "asbestos abatement projects."

**6.** Section 643.225 indicates that the Commission "shall promulgate rules and regulations it deems necessary to implement and administer the provisions of sections 643.225 to 643.250 [concerning asbestos abatement]...."

643.055.1, enacted *after* sections 643.020(12), 643.253(2), and 643.225–643.250, reflects the legislature's intent to limit asbestos regulations.[7] The "stricter than" limitation contained in section 643.055.1 overrides the 1989 legislative intent found in sections 643.020(12), 643.253(2), and 643.225–643.250.

The state asserts that this Court should overrule *Missouri Hospital Association* on the issue of whether section 643.055.1 restricts the Commission's rulemaking authority. In *Missouri Hospital Ass'n. v. Air Conservation Comm'n*, 874 S.W.2d at 380, the court of appeals compared section 643.055.1 to section 643.050.1, a statute that provided the Commission with broad rulemaking authority. The court noted that section 643.055.1 was the more specific statute because it set forth the Commission's rulemaking powers in specific terms. *Id.* at 394. The court of appeals concluded, therefore, that the specific rulemaking limitations on the Commission's power set forth in section 643.055.1 made it more specific than the broader section, 643.050. Under the analysis of *Missouri Hospital Association*, the more specific rulemaking limitation set forth in 643.055.1 makes it the controlling provision.

This Court has considered the state's request and declines to overrule *Missouri Hospital Association*. As soundly reasoned by the court of appeals, the plain language of section 643.055.1 and the most recent statement of legislative intent compel a conclusion that section 643.055.1 prohibits the Commission from promulgating rules that are more strict than federal regulations under the Federal Clean Air Act. As noted in *Missouri Hospital Association*, however, the general assembly has not limited its own authority; therefore, it retains the ability to enact statutes to provide for regulations stricter than the federal requirements by repealing or amending section 643.055.1.

Because this Court finds that the limitation in section 643.055.1 prohibits the Commission

from promulgating rules stricter than the federal regulations under the Federal Clean Air Act, it is necessary to remand to the trial court for a determination of those portions, if any, of 10 CSR 10–6.240 that are stricter than the federal requirements and are, therefore, void.

### V.

In a claim independent of Corvera's other challenges to 10 CSR 10–6.240, Corvera contends that the trial court erred in ruling that the bill that enacted sections 643.020 and 643.225 to 643.250, did not violate the clear title and single subject mandate of article I, section 23 of the Missouri Constitution. In December 1988, House Bill 77 was pre-filed and introduced in the general assembly. The bill was entitled, in pertinent part, "An Act ... for the purpose of regulating certain asbestos abatement projects." That same month, House Bill 78 was introduced with the title, "An Act relating to standards for and the operation of certain underground storage tanks, with penalty provisions." House Bill 356 was introduced the next month and entitled, in pertinent part, "An Act ... relating to water well drillers." The House of Representatives passed House Committee Substitutes for these three bills.

The Senate Environment and Energy Committee combined the three bills and amended the title as "An Act ... relating to environmental control." Senate amendments later deleted the bill's provisions concerning water well drillers and inserted provisions creating the Emergency Response Commission. After being passed out of the conference committee, the final version of the bill (CCSHB 77) was passed by both chambers of the general assembly. CCSHB 77 was entitled, "An Act to repeal [certain sections] and to enact in lieu thereof thirty-four new sections relating to environmental control, with penalty provisions and an emergency clause for certain sections." The governor then signed the bill into law.

---

7. Sections 643.225–.250, and sections 643.253(2) and 643.020(12) defining "asbestos abatement projects" were enacted in 1989 and have not subsequently been amended. The general assembly, however, amended section 643.055.1 in 1992 and 1994.

As finally agreed to and passed by the general assembly, Section A of CCSHB 77 creates the Missouri Emergency Response Commission in order to administer and implement sections 292.600 through 292.625, RSMo Supp.1997, and the federal Emergency Planning and Community Right–to–Know Act of 1986. The Emergency Response Commission's responsibilities include facilitating preparation and implementation of plans to cope with the release of hazardous substances. Section B of the bill establishes registration procedures, performance standards, enforcement procedures, and penalties relating to the ownership and use of underground storage tanks. This section also enables the Department to establish rules to regulate the use of underground storage tanks. Section C of the bill enacts provisions concerning asbestos abatement projects. These provisions provide certification and training requirements for asbestos contractors and regulate the manner in which asbestos abatement projects are conducted. These provisions also provide that the Commission shall implement and administer rules relating to asbestos abatement projects.

 Article III, section 23 of the Missouri Constitution provides, "No bill shall contain more than one subject which shall be clearly expressed in its title...." Article III, section 23 contains two distinct limitations on bills passed by the general assembly: first, a bill must contain a single subject; second, the subject of the bill must be clearly expressed in its title. *Carmack v. Dir., Missouri Dept. of Agric.*, 945 S.W.2d 956, 959 (Mo. banc 1997). Although the limitations of article III, section 23 are mandatory, procedural limitations on legislative acts are not favored. *Hammerschmidt v. Boone County*, 877 S.W.2d 98, 102 (Mo. banc 1994). A party asserting a violation of article III, section 23 must prove that the bill clearly and undoubtedly violates the constitution. *Id.* This Court has a duty to adopt the reading of a statute that is constitutional when alternate readings are possible. *Stroh Brewery Co. v. State*, 954 S.W.2d 323, 326 (Mo. banc 1997).

 Corvera first claims that the bill violates the clear title mandate of article III,

section 23. In order to survive a clear title challenge, the title of a bill need not give specific details of a bill, but need indicate only generally what the act contains. *St. Louis Health Care Network v. State*, 968 S.W.2d 145, 148 (Mo. banc 1998). The "subject" expressed in the bill cannot, however, be so broad that it obscures the contents of the act or renders the single subject mandate meaningless. *Id.* If the title is too broad or amorphous to identify a single subject, then the bill violates the clear title requirement of article III, section 23. *Id.*

The title of CCSHB 77 is "An Act to repeal [certain sections] and to enact in lieu thereof thirty-four new sections relating to environmental control...." A common and ordinary meaning of *environment* is "the complex of physical, chemical, and biotic factors (as climate, soil, and living things) that act upon an organism or an ecological community." Webster's Ninth New Collegiate Dictionary 416 (1991). *Control* in this context is defined as "the regulation of [an] activity by governmental directive." *Id.* at 285. The title of CCSHB 77, therefore, specifies that the contents of the act relate to regulating the environment.

 Relying on *Carmack v. Director, Missouri Dept. of Agriculture*, 945 S.W.2d 956 (Mo. banc 1997), Corvera argues that the title of CCSHB 77 is too broad to constitute a clear title because environmental control could include anything that indirectly protects the environment. *See id.* at 959–960 (rejecting as too broad the state's definition of economic development as "any activity that indirectly promotes or protects portions of the Missouri economy"). As Corvera suggests, if environmental control were defined as anything indirectly protecting portions of the Missouri environment, then the term *environmental control* might well be too broad to describe a single subject. *See id.* The term *environmental control*, however, does not require such a definition. Environmental regulation includes those provisions that directly protect or manage environmental resources through placing substantive stan-

dards on certain activities and enacting procedures that ensure that the purposes of environmental control are accomplished. Nothing in the title of CCSHB 77 indicates that the term *environmental control* must be defined to include anything whatsoever that may indirectly protect the environment. This Court concludes, therefore, that the term *environmental control* means environmental regulation in its plain and ordinary sense. *See Stroh Brewery,* 954 S.W.2d at 326 (stating that Court must adopt constitutional reading of statute if alternative readings exist). Environmental regulation or control specifies a single subject of legislation and provides sufficient notice of the contents of the act; that is, it clearly expresses the content of CCSHB 77. The title of CCSHB 77, therefore, satisfies the clear title mandate of article III, section 23 of the Missouri Constitution.

Having identified the subject of CCSHB 77 as environmental control, this Court must address Corvera's claim that CCSHB 77 violates the single subject mandate of article III, section 23. Every provision of CCSHB 77 must fairly relate to, have a natural connection with, or be a means of accomplishing environmental control. *Missouri Health Care Assoc.v. Attorney Gen. of Missouri.,* 953 S.W.2d 617, 622 (Mo. banc 1997). If any provisions of CCSHB 77 have too tenuous a connection with environmental control, then CCSHB 77 violates the single subject requirement.

■ A review of the contents of CCSHB 77 demonstrates that all the provisions of the bill fall within the subject of environmental control. Section A, which establishes the Emergency Response Commission, creates an agency to prevent and minimize damage from the release of hazardous substances. Section B, which regulates ownership and use of underground storage tanks, protects the environment from the hazards of spills

from these containers. Section C, which regulates asbestos abatement projects, preserves air quality by regulating those who conduct asbestos abatement projects and providing for the regulation of the manner in which those projects are conducted. By regulating potential environmental hazards, the provisions of CCSHB 77 fairly relate to, have a natural connection with, and are a means of accomplishing environmental control.

Corvera argues that many of the provisions in CCSHB 77 do not fall within the subject of environmental control because they do not constitute "government regulation of activities directly affecting the environment." For example, because some provisions relating to asbestos abatement provide for certification and training requirements for asbestos contractors, rather than directly regulating the way in which they dispose of asbestos, Corvera argues that the bill includes provisions that are not within the subject of environmental control. Corvera is mistaken. CCSHB 77 includes both substantive provisions that directly regulate environmental hazards and administrative provisions that allow for the enforcement of these and other provisions that protect the environment. Both types of provisions fairly relate to and are a means of accomplishing environmental control—in fact, both are necessary for effective environmental regulation. To conclude that substantive regulations of activities that affect the environment and related provisions that allow for their enforcement constitute two separate subjects of legislation would unnecessarily restrict the legitimate legislative process.[8] CCSHB 77 satisfies the requirements of article III, section 23 of the Missouri Constitution.

## VI.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is

8. Corvera concentrates on the manner in which CCSHB 77 was passed and speculates that the passage of CCSHB 77 violates the purposes of article III, section 23 as enumerated in *Hammerschmidt,* 877 S.W.2d at 101–02. Because CCSHB 77 has one subject clearly expressed in its title as required by the constitution, the process by which the bill was passed is of no consequence for this point.

remanded for further proceedings consistent with this opinion.

All concur.