**CITY OF ST. CHARLES, Missouri, a Constitutional Charter City, Respondent,**

v.

**STATE of Missouri, et al., Appellants.**

### No. SC 86335.

Supreme Court of Missouri, En Banc.

June 14, 2005.

Jeremiah W. (Jay) Nixon, Attorney General, Paul C. Wilson, Alana M. Barragan–Scott, Daniel Y. Hall, Assistant Attorneys General, Jefferson City, for appellants.

Stephen A. Martin, St. Charles, for respondent.

STEPHEN N. LIMBAUGH, JR., Judge.

The City of St. Charles challenges the validity of certain amendments to section 99.847, RSMo Supp.2003, pertaining to tax increment financing. In particular, the City contends that the amendments, enacted by the General Assembly in 2002 as part of Senate Bill 1107, violate the prohibition against multiple subjects set out in article III, section 23, of the Missouri Constitution. The circuit court entered judgment in favor of the City. This Court has exclusive jurisdiction of the appeal. Mo. Const. art. V, sec. 3. The judgment is reversed.

The rules for challenges to the constitutional validity of statutes are well established. "An act of the legislature carries a strong presumption of constitutionality." *Carmack v. Director, Mo. Dept. of Agriculture*, 945 S.W.2d 956, 959 (Mo. banc 1997). Any doubts raised are to be resolved by this Court in favor of the procedural and substantive validity of the legislation. *Id.* Moreover, the party attacking the statute must show that the constitutional limitation has been "clearly

and undoubtedly" violated. *Fust v. Attorney General*, 947 S.W.2d 424, 427–28 (Mo. banc 1997).

Article III, section 23, the constitutional limitation in this case, states that "No bill shall contain more than one subject which shall be clearly expressed in its title." The title to S.B.1107 is, "An Act To repeal [certain sections], and to enact in lieu thereof forty-three new sections relating to emergency services, with penalty provisions." The essence of the City's challenge, and the basis for the circuit court's ruling, is that the provisions of S.B. 1107 pertaining to tax increment financing do not "relat[e] to emergency services," which is the clearly stated subject of S.B. 1107, so that the bill contains more than one subject—sections properly relating to emergency services and sections that do not.

Tax increment financing, in general, is the statutory mechanism for public financing of private redevelopment projects with the goal that the projects will generate tax revenues that exceed the revenues before the redevelopment. Sec. 99.800 et seq., RSMo 2000; *see also* Josh Reinert, Comment, Tax Increment Financing In Missouri: Is It Time For Blight And But–For To Go?, 45 St.L.U.L.J. 1019 (Summer 2001). The amendments in question prohibit new tax increment financing in counties such as St. Charles that have a charter form of government, between 250,000 and 300,000 inhabitants, and an area "designated as flood plain by the Federal Emergency Management Agency." These amendments (the TIF amendments) added subsections 2 and 3 to section 99.847, which state in full:

2. Notwithstanding the provisions of sections 99.800 to 99.865 to the contrary, no new tax increment financing project shall be authorized in any area which is within an area designated as flood plain by the Federal Emergency Management Agency and which is located in or partly within a county with a charter form of government with greater than two hundred fifty thousand inhabitants but fewer than three hundred thousand inhabitants.

3. This subsection shall not apply to tax increment financing projects or districts approved prior to July 1, 2003, and shall allow the aforementioned tax increment financing projects to modify, amend or expand such projects including redevelopment project costs by not more than forty percent of such project original projected cost including redevelopment project costs [sic] as such projects including redevelopment project costs existed as of June 30, 2003, and shall allow the aforementioned tax increment financing district to modify, amend or expand such districts by not more than five percent as such districts existed as of June 30, 2003.

The test in determining whether a provision of a bill violates the single subject rule is "not whether individual provisions of a bill relate to each other ... [but] whether [the challenged provision] fairly relates to the subject described in the title of the bill, has a natural connection to the subject, or is a means to accomplish the law's purpose." *Fust*, 947 S.W.2d at 428. Said another way, the subject of a bill, within the meaning of article III, section 23, "includes all matters that fall within or reasonably relate to the general core purpose of the proposed legislation." *Hammerschmidt v. Boone County*, 877 S.W.2d 98, 102 (Mo. banc 1994).

In view of these rules, this Court concludes that the TIF amendments are indeed sufficiently related to the subject of the bill—emergency services—to pass constitutional muster. Although in the abstract there seems to be no connection at

all between emergency services and tax increment financing, in the context of the TIF amendments—the newly amended section 99.847—there is a direct connection. The obvious and significant goal of the TIF amendments is to ensure that adequate emergency services are available in certain areas that need them most— "area[s] designated as flood plain by the Federal Emergency Management Agency." That goal is sought to be achieved by prohibiting new TIF districts in flood plain areas and eliminating the corresponding public-financing incentives for private redevelopment, so that there is less likelihood that development will occur, thus less need for emergency services. Nonetheless, the City maintains that the prohibition of new TIF districts has no real relation to the subject of emergency services because new TIF districts will generate enough additional tax revenue to accommodate any increase in the cost for providing emergency services. However, this argument ignores that there still would be a risk that the district would underperform and be unable to bear that cost, and that risk could well be part of the legislature's concern in prohibiting the new TIF districts. In sum, it is the opinion of this Court that the TIF amendments fairly relate to the provision of emergency services, the subject of S.B. 1107.

The case of *C.C. Dillon Company v. City of Eureka,* 12 S.W.3d 322 (Mo. banc 2000), informs our decision. This Court held that a provision in a bill for regulation of billboards properly related to the stated subject of the bill, which was "transportation." Though at first glance billboards and transportation appeared to be disparate subjects, the constitutionally required relation was that the regulation of billboards was necessary to promote highway safety, a component of the larger subject of transportation. *Id.* at 327–29.

For the foregoing reasons, this Court holds that there is no violation of article III, section 23. The judgment is reversed.

All concur.