ELLER OUTDOOR ADVERTISING OF KANSAS CITY Through its ELLER OUTDOOR ADVERTISING OF ST. LOUIS DIVISION, a Corporation, Plaintiff-Appellant,

v.

MISSOURI STATE HIGHWAY COMMISSION, Predecessor to Missouri Highway and Transportation Commission, Defendant-Respondent.

ELLER OUTDOOR ADVERTISING OF KANSAS CITY Through its ELLER OUTDOOR ADVERTISING OF ST. LOUIS DIVISION, a Corporation, and Select Properties, Inc., a Corporation, Plaintiffs-Appellants,

v.

STATE HIGHWAY COMMISSION, Predecessor to Missouri Highway and Transportation Commission, Defendant-Respondent.

Nos. WD31873, WD31887.

Missouri Court of Appeals,
Western District.

Oct. 27, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 1, 1981.

Application to Transfer Denied
Jan. 18, 1982.

Bartlett & Venters, P. C. by Alex Bartlett, Jefferson City, for plaintiff-appellant.

Bruce A. Ring, Chief Counsel, Curtis F. Thompson, Asst. Counsel, Jefferson City, for defendant-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

DIXON, Judge.

These are consolidated appeals from separate determinations by the Circuit Court of Cole County that plaintiffs-appellants must remove certain billboards without compensation, pursuant to the order of respondent, Missouri State Highway Commission.

The parties stipulated in the trial court and concede in their briefs on this appeal that the dispositive issue is whether the signs in question violate the provisions of § 226.540(3)(a)b RSMo 1978:

> b. Outside of incorporated municipalities, no structure may be located adjacent to or within five hundred feet of an interchange, intersection at grade, or safety rest area. Said five hundred feet shall be measured from the beginning or ending of the pavement widening at the exit from or entrance to the main traveled way. For purpose of this subparagraph b, the term "incorporated municipalities" shall include "urban areas", except that such "urban areas" shall not be considered "incorporated municipalities" if it is finally determined that such would have the effect of making Missouri be in noncompliance with the requirements of Title 23, United States Code, section 131.

The respondent Commission argues that it has been "finally determined" that if urban areas are considered "incorporated municipalities," Missouri would be in noncompliance with 23 U.S.C. § 131 (1966). The Commission argues that the "except" language has become effective and that the definition of "incorporated areas" as including "urban areas" is no longer in effect. The Commission refers to this as a "self destruct clause." The plaintiffs argue that the question of noncompliance has not been "finally determined" and that the signs do not offend the statute. The briefing of the parties centers upon the issue of the legislative intent embodied in the term "finally determined."

The dispute in the instant case is but another chapter in the continuing saga of the federal government's attempt to control the aesthetic aspects of highway signboard construction by the threat of withholding of federal funds if the state fails to comply with the federal policies contained in 23 U.S.C. § 131 and regulations adopted pursuant to that statute.

Federal law first offered a bonus to states which complied with federal laws respecting erection and maintenance of billboards. Missouri did not elect to comply with that law. In 1965, the Congress adopted the highway beautification law contained in 23 U.S.C. § 131. This federal law provided that if a state failed to comply, it would lose ten percent of its federal highway funds. Compliance required generally that signs 660 feet or less from interstate and primary highways were to be "controlled" as to type of sign and location of signs. Signs already in existence and in non-compliance were to be removed upon payment of "just compensation."

In 1966 Missouri enacted §§ 226.500 through 226.600 which regulated highway signboards. In 1971, the federal authorities administratively determined Missouri was in noncompliance with § 131 of 23 U.S.C. because the statutes did not sufficiently control outdoor advertising signs along

highways.[1] The Secretary of Transportation deferred the effective date of the findings of noncompliance until March 31, 1972, to permit the Missouri General Assembly to act. As the deadline approached, the Missouri Attorney General filed, on behalf of the Missouri State Highway Commission, in the Federal District Court, pursuant to 23 U.S.C. § 131(*l*), an action to review the administrative determination of noncompliance. That section of the federal law, in relevant part, is as follows:

(a) Not less than sixty days before making a *final determination* to withhold funds from a State ..., the Secretary shall give written notice to the State of his proposed determination and a statement of the reasons therefor, and during such period shall give the State an opportunity for a hearing on such determination. Following such hearing the Secretary shall issue a written order setting forth his *final determination* and shall furnish a copy of such order to the State. Within forty-five days of receipt of such order, *the State may appeal such order to any United States district court* for such State, and upon the filing of such appeal such order shall be stayed until final judgment has been entered on such appeal.... The Court shall have jurisdiction to affirm the determination of the Secretary or to set it aside, in whole or in part. The judgment of the court shall be subject to review by the United States court of appeals for the circuit in which the State is located and to the Supreme Court of the United States upon certiorari ....

(Emphasis added).

While this suit was pending, the General Assembly, in March of 1972, passed Senate Bill No. 382, effective March 30, 1972, and the suit was dismissed.

Senate Bill No. 382 extensively amended the Missouri statute to specify in some detail the restrictions on such billboards as are here involved. Section 226.540(3)(a)b as contained in Senate Bill 382 read as follows:

b. Outside of incorporated municipalities, no structure may be located adjacent to or within five hundred feet of an interchange, intersection at grade, or safety rest area. Said five hundred feet shall be measured from the beginning or ending of the pavement widening at the exit from or entrance to the main traveled way.

In 1974, the federal government again amended 23 U.S.C. § 131 to make regulation of billboards more onerous. These amendments required control of billboards beyond 660 feet but excepted "urban areas." The General Assembly reacted by enacting House Bill No. 1478 in 1976. In House Bill No. 1478, the federal definition of urban areas was enacted into Missouri law. Section 226.510(6) RSMo 1978. In the same bill, House Bill No. 1478, the legislature added to § 226.540(3)(a)b enacted by Senate Bill No. 382 of the 1972 General Assembly the following language:

For purpose of this subparagraph b, the term 'incorporated municipalities' shall include 'urban areas', except that such 'urban areas' shall not be considered 'incorporated municipalities' if it is finally determined that such would have the effect of making Missouri be in noncompliance with the requirements of Title 23, United States Code, section 131.

The signs in question in this case are in urban areas and thus lawful even though closer to an interchange than 500 feet if it has not been "finally determined" that this

---

1. The scheme of 23 U.S.C. § 131 does not differ from the scheme originally enacted. That scheme provided that the Secretary shall initially determine whether the state has made provision for effective control of outdoor advertising signs. 23 U.S.C. § 131(b) (1966). In the event the Secretary determines that the state has not provided for such effective control, he is authorized to direct the withholding of ten percent of the funds apportioned to such state

until such time as the state shall provide such effective control. He is likewise authorized to suspend for such periods as he deems necessary the application of this rule to a state. Subsequent to the ex parte initial determination of noncompliance by the Secretary, the statutory scheme then provides for notification of decision, administrative and judicial review, and the time periods set forth in § 131(*l*) of 23 U.S.C. (1966).

would place Missouri in noncompliance with federal statutes and rules and Title 23 Section 131 U.S.C.[2]

The Highway Commission argues three separate interpretations of "finally determine." First, they say the law places the responsibility for enforcement of the billboard restrictions on them and the determination of the Commission as to a conflict with federal law is a final determination. They buttress this argument with the principle that an enforcement agency's interpretation of a statute is given great weight. The plaintiffs provide a ready answer to this by pointing out that in the administrative review portion of this appeal that interpretation is the issue appealed and thus cannot be final until the appellate process is complete. Recognizing the weakness of the first argument, the Commission then says:

> *The respondent* realizes that the "finally determined" phrase *may mean a determination by a court.* If that is the proper reading of the staute [*sic*], the respondent asserts that when the circuit court adopted its interpretation it *"finally determined" that appellant's interpretation was improper.* Moreover, *this court in affirming the circuit court can likewise determine that the subject signs* violate the federal-state agreement and federal law and regulations, thus, violating state law, and must be removed without compensation.

(Emphasis added).

This argument has at least two fatal flaws. The self-destruct language could only operate when the appellate process was complete. Further and more significantly, the determination by this court could not bind the federal officials and the federal courts with such a determination. Whatever this court might determine on the effect of permitting such signs would have no effect on what a federal court might decide on an issue of federal law.

As its third argument, the Commission contends that the issue is "finally determined" when the Secretary of Transportation has made his determination. The Commission relies on a letter from the Federal Highway Administrator which asserts that in the opinion of the writer, the Missouri statutes in question conflict with the federal law. The Federal Highway Administrator is not the Secretary of Transportation, and there is no showing in this record that the Secretary has made such a determination as 23 U.S.C. § 131 requires. Thus, even if the administrative decision by the Secretary of Transportation causes the self-destruct clause to operate, that event has not occurred.

None of the positions taken by the Commission represent a basis for determining legislative intent in these circumstances.

The plaintiff billboard company argues persuasively that the legislative history outlined above demonstrates a legislative intent to provide a statutory exemption for the billboards in question until the federal authorities have ruled to the contrary. Plaintiffs emphasize that the Missouri statute utilizes the same language of "finally determined" that is found in the federal law, that the Missouri statute cites the federal statute, and that the early legislative history shows an awareness of the process of "final determination" by the Missouri legislature. They conclude the statute was intended to require the federal authorities to undertake affirmative action to finally determine noncompliance.

Plaintiffs also point to the specific legislative process by which the statute reached its present form as being persuasive on the issue of legislative intent.

**2.** This proposition assumes the validity of the prospective amendment effect of the statute. Cases have held that such a proviso, making law subject to future change dependent upon future action of the Congress, is invalid under Mo.Const. Art. IV, § 34 (1875). *State v. Berry*, 253 S.W. 712 (Mo.1923); *State v. Fenley*, 309 Mo. 520, 275 S.W. 36 (1925). Article IV, § 34 of the 1875 Constitution is substantially the same as Article III, § 28 of the Missouri Constitution of 1945. See also *State v. Duren*, 547 S.W.2d 476 (Mo. banc 1977); *State ex rel. McNary v. Stussie*, 518 S.W.2d 630 (Mo. banc 1974). The parties have not raised the constitutional issue.

On April 12, 1976, the House of Representatives adopted House Amendment No. 5 to ... section [226.540(3)(a)b] which attempted to broadly expand the provision to allow signs within 500 feet of an interchange in any area which was ... comprehensively zoned by any local zoning authority.... Journal of the House, p. 1417, April 12, 1976. There was a concern that ... [*the amendment*] might create problems with the federal authorities, .... On the floor of the Senate on the last day of the session, April 30, 1976, ... a compromise proposal ... Senate Amendment No. 2 ... was adopted on the floor of the Senate.... Senate Journal April 30, 1976. This was later approved by the House and is the provision here under consideration for construction.

This legislative history and plaintiffs' contention are persuasive on the issue of legislative intent. The legislature must have intended, as the plaintiffs argue, that the finally determined language refers to the determination provided for in 23 U.S.C. § 131. That has not occurred according to the parties' stipulation; and the circuit court was in error in ordering the signs removed without compensation. The judgments of the circuit court are reversed. In WD31873, the circuit court is directed to remand the cause to the Missouri Highway and Transportation Commission with directions to set aside its order to remove the signs. In WD31887, the circuit court is directed to reinstate plaintiffs' petition for declaratory and injunctive relief.

All concur.