C.C. DILLON COMPANY, Appellant,

v.

CITY OF EUREKA, Missouri, et al., Respondents.

No. SC 81586.

Supreme Court of Missouri, En Banc.

March 7, 2000.

Warren W. Friedman, Scott D. Mosier, St. Louis, for appellant.

Katherine L. Butler, Patrick S. Butler, Eureka, for respondents.

WILLIAM RAY PRICE, Jr., Chief Justice.

This case involves the constitutionality of section 71.288, RSMo Supp.1999, which allows cities and counties to more restrictively regulate billboards than provided in the Missouri Billboards Act, sections 226.500 to 226.600, RSMo 1994 & Supp. 1999 ("Billboards Act"). The City of Eureka ("City") based its billboard regulation ordinance on section 71.288 and denied C.C. Dillon Company's ("Dillon") billboard permit. Dillon claims that the legislative amendments to the several bills establishing and amending section 71.288 were enacted in violation of sections 21, 23, and 28 of article III of the Missouri Constitution. The trial court granted summary judgment for the City. We have exclusive jurisdiction pursuant

to Missouri Constitution article V, section 3. We affirm.

## I.

On May 13, 1997, the Missouri Department of Transportation ("MoDOT") granted Dillon a permit to erect a billboard along Interstate 44 Highway within the City. On June 2, 1997, Dillon applied to the City for a permit to erect the billboard. The City Administrator denied the permit application on September 11, 1997, because the billboard did not comply with the City's more restrictive regulations. Dillon subsequently sought a variance from the City's Board of Adjustment, which was also denied.

Dillon filed a declaratory judgment action seeking a ruling that the bills that created and amended section 71.288 authorizing the city's more restrictive regulations were constitutionally invalid.[1] The bills at issue are 1997 House Bill 831, 1998 Senate Bill 883, and 1998 House Bills (combined) 1681 & 1342.

## II.

### A.

Dillon's challenge to House Bill 831, enacted in 1997, which created section 71.288, is moot. That bill was repealed the following year by the enactment of Senate Bill 883. Senate Bill 883 repealed "former" section 71.288 and enacted in lieu thereof a "new" section 71.288. "The repeal of a law means its complete abrogation by the enactment of a subsequent statute." *State ex rel. Peebles v. Moore*, 339 Mo. 492, 99 S.W.2d 17, 19 (1936) (citation omitted).

A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. When an event

occurs which renders a decision unnecessary, the appeal will be dismissed. And where an enactment supersedes the statute on which the litigants rely to define their rights, the appeal no longer represents an actual controversy, and the case will be dismissed as moot. *Bank of Washington v. McAuliffe*, 676 S.W.2d 483, 487 (Mo. banc 1984) (citations omitted). Once the General Assembly repealed "former" section 71.288, this Court's basis for deciding the constitutionality of that statute evaporated. No relief can be granted concerning the validity of that statute, now repealed.

### B.

Senate Bill 883 was introduced on February 5, 1998, and was entitled "An Act to repeal section 226.040, RSMo Supp.1997, relating to transportation, and to enact in lieu thereof two new sections relating to the same subject." While the bill was being taken up for the third reading, House Amendment No. 1 was adopted, which revised section 71.288 by stating: "Any city or county shall have the authority to adopt regulations with respect to outdoor advertising that are more restrictive than the height, size, lighting and spacing provisions of sections 226.500 to 226.600, RSMo." The amendment also limited business taxes that cities or counties could impose on billboards to two percent of the gross annual revenue produced by the advertising structure. Numerous other amendments were adopted concerning sections 21.795, 43.030, 226.005, 226.140 as well as sections on fiscal notes. The Senate refused to concur with these House amendments and the bill was sent to a conference committee.

The final version, Conference Committee Substitute for House Committee Substitute for Senate Bill 883 ("CCS HCS SB 883"), was entitled "An Act to repeal sections 43.030, 226.040 and 226.140, RSMo

---

1. Dillon has "clearly stated that it was not raising [a] vested right issue" in obtaining a billboard permit. App. Reply Brief at 8.

1994, and sections 71.288 and 226.005, RSMo Supp.1997, relating to transportation, and to enact in lieu thereof seven new sections relating to the same subject." Section 21.795 established the permanent Joint Committee on Transportation Oversight to help account for transportation project funds. Section 43.030 amendments deleted the requirement that highway patrol member salary increases be the same as state merit employees. Amendments to section 226.005 pertained to organizational and salary issues of the Missouri Department of Transportation. Amendments to section 226.040 pertained to the position of the chief executive officer position of the highways and transportation commission and amendments to section 226.140 pertained to audits of that commission. The governor signed CCS HCS SB 883[2] into law on July 6, 1998, with an effective date of August 28, 1998. 1998 Mo. Laws 1574.

## III.

■ Article III, section 21 provides, "no bill shall be so amended in its passage through either house as to change its original purpose." Article III, section 23 provides, "[n]o bill shall contain more than one subject which shall be clearly expressed in its title...." The purpose of these two sections[3] is "to keep individual members of the legislature and the public fairly apprised of the subject matter of pending laws and to insulate the governor from 'take-it-or-leave-it' choices when contemplating the use of the veto power." *Stroh Brewery Co. v. State*, 954 S.W.2d 323, 325–26 (Mo. banc 1997).

■ Article III, section 28 provides:

[n]o act shall be amended by providing that words be stricken out or inserted, but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended.

This section's purpose is to avoid the confusion, uncertainty, and inconvenience that comes from having fragmented statutory amendments. *See generally State v. Chambers*, 70 Mo. 625, 628 (1879) (discussing article IV, section 34 of the 1875 Con-

---

**2.** Interestingly, another bill, as enacted, was identical to CCS HCS SB 883: House Bills (combined) 1681 & 1342. After the two bills were consolidated, Conference Committee Substitute for Senate Committee Substitute for House Committee Substitute for House Bills 1681 & 1342 was entitled "An Act to repeal sections 43.030, 226.040, and 226.140 RSMo 1994, and sections 71.288 and 226.005 RSMo Supp.1997, relating to transportation, and to enact in lieu thereof seven new sections relating to the same subject." The governor signed CCS SCS HCS HB 1681 & 1342 into law on July 6, 1998, with an effective date of August 28, 1998. 1998 Mo. Laws 849. Because our resolution of CCS HCS SB 883 provides a constitutional foundation for the section 71.288 amendments, we do not address the constitutionality of CCS SCS HCS HB 1681 & 1342.

**3.** A number of recent cases have construed these two provisions. *See Corvera Abatement Technologies, Inc. v. Air Conservation Comm'n*, 973 S.W.2d 851 (Mo. banc 1998) (upholding legislation against a section 23 clear title and single subject challenge); *St. Louis Health Care Network v. State*, 968 S.W.2d 145 (Mo. banc 1998) (invalidating leg-islation pursuant to a section 23 clear title challenge); *National Solid Waste Management Ass'n v. Director of the Dept. of Natural Resources*, 964 S.W.2d 818 (Mo. banc 1998) (same); *Stroh Brewery Co. v. State*, 954 S.W.2d 323 (Mo. banc 1997) (upholding legislation against a section 21 original purpose and section 23 single subject challenge); *Missouri Health Care Ass'n v. Attorney General*, 953 S.W.2d 617 (Mo. banc 1997) (invalidating legislation pursuant to a section 23 single subject challenge); *Fust v. Attorney General*, 947 S.W.2d 424 (Mo. banc 1997) (upholding legislation against a section 23 clear title and single subject challenge); *Carmack v. Director, Missouri Dept. of Ag.*, 945 S.W.2d 956 (Mo. banc 1997) (invalidating legislation pursuant to a section 23 single subject challenge); *Akin v. Director of Revenue*, 934 S.W.2d 295 (Mo. banc 1996) (upholding legislation against a section 21 original purpose and section 23 single subject challenge); and *Hammerschmidt v. Boone County*, 877 S.W.2d 98 (Mo. banc 1994) (invalidating legislation pursuant to a section 23 single subject challenge).

stitution, which is the same as article III, section 28 of the 1945 Constitution). The desired result of provisions like section 28 "is to have in a section as amended a complete section so that no further search will be required to determine the provisions of such section as amended." *Flanders v. Morris*, 88 Wash.2d 183, 558 P.2d 769, 773 (1977) (discussing a state constitutional provision similar to that of Missouri's section 28) (citation omitted). Additionally, section 28 seeks to ensure that legislators are aware of the content and effect of the amended law. 1A Sutherland, Statutory Construction, section 22.16.

■■■ "The use of these procedural limitations to attack the constitutionality of statutes is not favored. A statute has a presumption of constitutionality." *Stroh*, 954 S.W.2d at 326. We interpret "procedural limitations liberally and will uphold the constitutionality of a statute against such an attack unless the act *clearly and undoubtedly* violates the constitutional limitation." *Hammerschmidt*, 877 S.W.2d at 102 (emphasis added). "The burden of establishing [a statute's] unconstitutionality rests upon the party questioning it." *State v. Hampton*, 653 S.W.2d 191, 194 (Mo. banc 1983) (citation omitted).

## IV.

### A.

■■■ Dillon's argument that CCS HCS SB 883 violates section 21's original purpose rule focuses upon the fact that the bill as introduced pertained only to transportation. Thus, Dillon argues that to add provisions to the bill relating to billboards altered the original purpose of the bill.

■■■ Section 21 seeks to restrict "the introduction of subject matter that is not germane to the object of the legislation or that is unrelated to its original subject. Alterations that bring about an extension or limitation of the scope of the bill are not prohibited; even new matter is not excluded if germane." *Stroh*, 954 S.W.2d at 326 (citation omitted). "The original purpose of the bill must, of course, be measured at the time of the bill's introduction." *Stroh*, 954 S.W.2d at 326.

Dillon's burden, then, is to demonstrate that billboards are "clearly and undoubtedly" not germane to transportation. "Germane" is defined as: "in close relationship, appropriate, relative, pertinent. Relevant to or closely allied." Black's Law Dictionary 687 (6th ed.). Dillon fails to carry this burden. The very function of billboards is to capture the attention of the traveling public. Billboards have been inextricably linked to highway transportation by federal and state legislation.

In 1958, Congress enacted the Federal–Aid Highway Act, which granted a monetary bonus to those states that passed outdoor advertising control measures. Federal–Aid Highway Act of 1958, Pub.L. No. 85–767, 72 Stat. 885, 904. Of the twenty-five states that passed such measures, Missouri chose not to participate. *See Eller Outdoor Advertising of Kansas City v. Missouri State Highway Comm'n*, 629 S.W.2d 462, 463 (Mo.App.1981).

In May of 1965, then-President Johnson conducted the first ever White House Conference on Beauty. *See* H.R.Rep. No. 1084, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S.C.C.A.N. 3710, 3711. The conference's recommendations spawned the Highway Beautification Act of 1965, codified at 23 U.S.C. sec. 131. This legislation provided that if states did not adopt regulations for the "effective control of the erection and maintenance along the Interstate System and the primary system of outdoor advertising signs, displays, and devices," then those states would lose ten percent of their federal highway funds. 23 U.S.C. sec. 131(b) (1994).

Congress expressed the public policy behind the Act:

> The Congress hereby finds and declares that the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the Interstate System and the primary system

should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty.

23 U.S.C. sec. 131(a) (1994).

Missouri's regulatory response to save its share of federal highway funds is the Missouri Billboards Act, sections 226.500 to 226.600. Important to this case are the Missouri General Assembly's findings and declarations

> that outdoor advertising is a legitimate commercial use of private property adjacent to the interstate and primary highway systems and that it is necessary to regulate and control same *to promote highway safety, to promote convenience and enjoyment of highway travel, and to preserve the natural scenic beauty of highways and adjacent areas.* The general assembly further declares it to be the public policy of this state that the erection and maintenance of outdoor advertising in areas adjacent to the interstate and primary highway systems be regulated in accordance with sections 226.500 to 226.600 and rules and regulations promulgated by the state highways and transportation commission pursuant thereto.

Section 226.500, RSMo 1994 (emphasis added).

Thus, both the federal and Missouri state governments have recognized that the transportation system, specifically the Interstate System and the primary highway system, is impacted by the effective control of outdoor advertising structures. The Missouri Highway and Transportation Commission has adopted administrative rules to implement the Missouri Billboards Act. *See* Mo.Code Regs. tit. 7, sec. 10–6. And, as Dillon did in this case, an outdoor

advertising permit must be obtained from MoDOT for placement of a billboard within 660 feet of the Interstate or primary system's right-of-way. *See* Mo.Code Regs. tit. 7, sec. 10–6.070.

The express public policy decision to place the responsibility of regulating billboards with MoDOT,[4] combined with the historical context of conditioning federal highway funds on effective billboard regulation, is fatal to Dillon's argument that billboards are not clearly and undoubtedly germane to transportation. The United States Congress and the Missouri General Assembly have demonstrated that these subjects are germane to one another. The introduction of billboard regulations into a bill relating to transportation does not change the bill's original purpose. CCS HCS SB 883 does not violate article III, section 21 of the Missouri Constitution.

### B.

 Section 23 imposes two distinct procedural limitations by which the General Assembly may pass legislation: (1) a bill cannot contain more than one subject and (2) the subject of the bill must be clearly expressed in its title. Mo. Const. art. III, sec. 23.

### 1.

 "The test to determine if a bill contains more than one subject is whether all provisions of the bill fairly relate to the same subject, have a natural connection therewith or are incidents or means to accomplish its purpose." *Stroh,* 954 S.W.2d at 327 (citations omitted). This test does not concern the relationship between individual provisions, but between the individual provision and the subject as expressed in the title. *Fust,* 947 S.W.2d at 428. "The determination of whether a bill

---

**4.** In 1913, the Missouri legislature created the State Highway Department. 1913 Mo. Laws 697. In 1974, the Missouri State Department of Transportation was created. Omnibus State Reorganization Act of 1974, section 14. In 1980, the two departments were merged, creating the Missouri Highway and Transportation Department. Mo. Const. art. IV, sec. 29. Finally, in 1996 this department was renamed the Missouri Department of Transportation, commonly referred to as MoDOT. 1996 Mo. Laws 788.

violates the article III, section 23 single subject requirement is made concerning the bill as it is finally passed. We look first to the title of the bill to determine its subject." *Stroh*, 954 S.W.2d at 327 (citations omitted).

Dillon argues only that the addition of the billboard regulations, as they relate to "transportation," introduces multiple subjects within the bill. The title as enacted reads "An Act to repeal sections 43.030, 226.040 and 226.140, RSMo 1994, and sections 71.288 and 226.005, RSMo Supp.1997, relating to transportation, and to enact in lieu thereof seven new sections relating to the same subject." Assuming that "transportation" is not too broad to identify a single subject, an argument neither made nor addressed here, all of the provisions of the bill must fall within it.

Dillon's argument is exactly the same as its section 21 challenge. As previously noted, the seven new sections concerned the Joint Committee on Transportation Oversight, the Missouri State Highway Patrol, the Department of Transportation, and billboard regulations. Dillon does not develop any argument that any bill provision, except for the billboard provisions, violate section 23's single subject requirement. Our analysis in determining that billboards are germane to transportation also supports our determination here that billboards fairly relate to, or are naturally connected with, transportation. CCS HCS SB 883 does not violate the single subject requirement article III, section 23 of the Missouri Constitution.

### 2.

■■■■ We have stated the test for evaluating a clear title challenge as follows:

> The "clear title" provision, like the "single subject" restriction, was designed to prevent fraudulent, misleading, and improper legislation, by providing that the title should indicate in a general way the kind of legislation that was being enacted. If the title of a bill contains a

particular limitation or restriction, a provision that goes beyond the limitation in the title is invalid because such title affirmatively misleads the reader.

*Fust*, 947 S.W.2d at 429 (citations omitted). The touchstone of the clear title rule is that the bill's title cannot be underinclusive. *See National Solid Waste Management Ass'n*, 964 S.W.2d at 821. "The title to a bill need only indicate the general contents of the act." *Westin Crown Plaza Hotel Co. v. King*, 664 S.W.2d 2, 6 (Mo. banc 1984) (citation omitted). "The title cannot, however, be so general that it tends to obscure the contents of the act." *St. Louis Health Care Network v. State*, 968 S.W.2d 145, 147 (Mo. banc 1998) (citation omitted).

■■■■ Dillon argues the rule was violated because the subject of billboards was not expressed in the title as originally introduced. Dillon miscomprehends the import of the clear title rule. First, the clear title rule necessarily applies to the version of the bill that passed, not the introduced version. Second, the title to this bill, "relating to transportation," includes rather than excludes the bill's provisions. In Missouri at least, billboard regulation is not underinclusive of transportation. Federal highway transportation funds depend on the state's billboard regulations and the state has given regulatory authority of billboards to MoDOT. Third, "[t]he title need not describe every detail contained in the bill." *Fust*, 947 S.W.2d at 429.

We do not need to address the City's argument that the bill's title was clear simply because section 71.288 was listed as being repealed and subsequently reenacted. *See St. Louis Health Care Network*, 968 S.W.2d at 148 ("This Court need not determine the broad question of whether a listing of statutory sections in the title of a bill can operate to produce a clear title.") CCS HCS SB 883 does not violate the clear title requirement of article

III, section 23 of the Missouri Constitution.

## C.

■ Dillon argues CCS HCS SB 883 violates article III, section 28 because it "merely referred to the height, size, lighting and spacing provisions of sections 226.500 to 226.600, RSMo." App. Br. at 36. Dillon argues that not only was the language to be changed not set forth, but even the specific statutory sections were not identified.

Article III, section 28 provides:

No act shall be revived or reenacted unless it shall be set forth at length as if it were an original act. No act shall be amended by providing that words be stricken out or inserted, but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended.

It is important to remember why the Billboards Act was enacted: to set minimum regulations on outdoor advertising so that Missouri would not lose ten percent of its federal highway funds. *See State ex rel. Whiteco Industries, Inc. v. Bowers,* 965 S.W.2d 203, 207 (Mo.App.1998) ("On numerous occasions Missouri courts have reviewed the legislative history of the Act and have invariably concluded that the General Assembly intended to limit the regulation of off-premises advertising signs to the minimum extent necessary to comply with federal law."). Missouri cases have interpreted the Act as preempting more restrictive local controls. *See id.* ("[I]f a municipal ordinance does not contain size, lighting, and spacing regulations that conform to section 226.540.7, the ordinance is preempted and the regulations contained in the Act apply."). Nothing, however, prevents Missouri from itself increasing the level of restrictiveness, either at the state level or the local level.

■ *State ex rel. McNary v. Stussie,* 518 S.W.2d 630 (Mo. banc 1974), demonstrates what section 28 seeks to prevent. In that case, a section of a bill was enacted as follows:

3. After the effective date of this act, a minor is a person who has not attained the age of eighteen years and whenever the term 'twenty-one years of age' is used as a limiting or qualifying factor it shall be deemed to mean 'eighteen years of age', and the revisor of statutes is hereby authorized to make the appropriate changes in the Revised Statutes of Missouri as they are revised, reenacted or reprinted.

This case is distinguishable because the bill does not substitute one phrase for another phrase in any statutory section as did the bill provision in *McNary.* Instead, the bill is merely the state's election to allow local governments to exercise more than the minimum regulatory control necessary to maintain the state's federal highway funds under 23 U.S.C. sec. 131(a). "The fact that [a statute] has consequences for other statutes does not bring it into conflict with Art. III, sec. 28." *Boyd–Richardson Co. v. Leachman,* 615 S.W.2d 46, 53 (Mo. banc 1981). CCS HCS SB 883 does not violate article III, section 28.

## IV.

The judgment of the trial court is affirmed.

All concur.