James L. DRURY and Midamerica Hotels Corporation, Respondents/Cross–Appellants,

v.

CITY OF CAPE GIRARDEAU, Missouri, Appellant/Cross–Respondent.

No. SC 83901.

Supreme Court of Missouri, En Banc.

Feb. 13, 2002.

James E. Mello, Jeffery T. McPherson, St. Louis, for Appellant/Cross–Respondent.

Walter S. Drusch, Cape Girardeau, for Respondents/Cross–Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, Asst. Atty. Gen., Jefferson City, for Amicus Curiae State of Missouri.

Mark D. Grimm, St. Louis, Gary A. Anderson, Richard C. McConnell, Kansas City, Kevin M. O'Keefe, Paul E. Martin, St. Louis, for Amici Curiae City of St. Louis, Missouri, City of Kansas City, Missouri, and Missouri Municipal League.

Joseph J. Russell, J. Brian Baehr, Cape Girardeau, for Amicus Curiae Southeast Missouri State University.

RONNIE L. WHITE, Judge.

The question presented here is whether a City of Cape Girardeau (City) ordinance authorizing an increase in the City's accommodations tax to pay for a new performing arts center violated the "clear title" provision of the City's charter. The trial court invalidated the ordinance, ruling that the ordinance did not have a clear title because the title mentioned only the tax increase, not the provisions of the ordinance committing the proceeds to the performing arts center project. Under the liberal construction our courts traditionally employ in evaluating such challenges, however, the ordinance satisfies the "clear title" requirement and the judgment of the trial court invalidating the ordinance is therefore reversed.

## I. Background

The City of Cape Girardeau, together with Southeast Missouri State University (University), proposed to build and operate a performing arts center, museum and associated cultural facilities that would become the University's "River Campus," housing its School of Visual, Fine, and Performing Arts. Half of the funding for the project was to come from the State, with the remainder to come equally from the City and the University. To finance its share of the cost of the project, the City planned to increase and extend its tax on hotel and restaurant receipts and to use the proceeds to back newly issued munici-

pal bonds. Both the tax increase and the assumption of municipal debt required voter approval,[1] and the city council enacted ordinances to put the matters before the electorate at the November 3, 1998, municipal election. At that election, 53 % of the voters voted in favor of each proposition. Because the assumption of debt required a 4/7 vote (approximately 57.1 %), the bond issue was rejected, while the tax increase (which required only a simple majority) was approved. After the voters approved the taxes funding the project, the city council reworked the financing agreement so that the University would issue bonds to cover the City's portion of the project and the City agreed to devote the proceeds of the tax (subject to annual appropriation by the City Council) to the payment of principal and interest on the bonds.

Respondents James Drury and Mid–America Hotels (Drury) filed a petition for declaratory and injunctive relief challenging the validity of two ordinances: Ordinance 2403, which authorized the hotel/motel/restaurant tax increase and authorized the spending of the proceeds on the arts center project; and Ordinance 2465, which approved the contract with the University pledging the proceeds of the tax to back the bonds the University was to issue to cover the City's portion of the project's financing. On cross-motions for summary judgment, the trial court declared that Ordinance 2403 violated the city charter's "clear title" provision and enjoined its application and the collection of the tax it authorized. The trial court upheld the validity of Ordinance 2465, and both parties appealed.[2]

1. *See* Mo. Const. art. X, sec. 22(a); art. VI, sec. 26(b).

2. Drury challenges this Court's jurisdiction, claiming, for the first time, that the judgment below was not final because the trial court did not rule on an alternative theory raised on

summary judgment (but not in the pleadings) supporting the invalidity of Ordinance 2403. When a trial court fully grants the relief requested in a claim, that claim is fully disposed of for final judgment purposes, regardless of whether the court rules on all alternative ar-

## II. The City's Appeal

### A. *Ordinance 2403*

Ordinance 2403 is entitled:

An ordinance amending Chapter 15 of the City Code, increasing and extending the Hotel/Motel/Restaurant License Tax and calling an election in the City of Cape Girardeau, Missouri, on the question of whether to approve those amendments; designating the time of holding the election; authorizing and directing the city clerk to give notice of the election [3]

The ordinance contains ten articles. Article 1 provides generally that the ordinance amends City Code Chapter 15, which contains the hotel/motel/restaurant license tax. Article 2 provides the specific amendment, by repealing the existing provision (which imposes a three percent tax on hotel accommodations and a one percent tax on restaurant receipts) and replacing it with a new provision that raises the accommodations tax to four percent, maintains the restaurant tax at one percent, and extends the expiration date of the tax from 2004 to 2030. Article 3 provides that the substantive provisions of the article will become effective on January 1, 1999, if approved by the voters at the November election. Article 4 calls that election on the question:

Shall the license tax on hotels and motels set out in Section 15–397 of the Code of Ordinances of the City of Cape Girardeau, Missouri, be increased from three (3) percent to four (4) percent of gross receipts derived from transient guests for sleeping accommodations, and shall the license tax on hotels, motels and restaurants set out in that section be extended to expire on December 31, 2030, for the purpose of paying a portion of the costs of acquiring, constructing, furnishing and equipping a performing arts center, museum and associated cultural facilities for the City of Cape Girardeau and Southeast Missouri State University to be located at the University's river campus.

Article 5 approves the form of notice for the election and Article 6 directs notification of the county clerk. Articles 9 and 10 provide that the ordinance is an emergency measure and therefore immediately effective (the ordinance would otherwise not have been effective for at least ten days following its passage).

Articles 7 and 8, which specify the uses to which the tax proceeds are to be put, are the focus of Drury's insufficient title argument. Article 7 provides that the proceeds of the tax are to be used, subject to annual appropriation by the city council, to pay principal and interest on bonds to be issued to pay a portion of the costs of constructing the performing arts center project and to pay the costs of the City's convention and visitors bureau. The article states that if the tax proceeds exceed the amount necessary for those purposes, the excess will be placed in an escrow account established for the sole purpose of paying future principal and interest on the project bonds. Once the bonds are retired, the tax terminates, and any remaining funds in the escrow account are to be used for the convention and visitors bureau. Article 8 provides that if the State and the University have not (in the city council's opinion) committed sufficient

guments supporting that relief. *See State ex rel. Hilburn v. Staeden,* 62 S.W.3d 58 (Mo. banc 2001). Here the declaration of invalidity and injunction against collection of the tax authorized by Ordinance 2403 fully disposed of the claim, and the judgment below was final for purposes of appeal.

**3.** The original title was rendered in all capital letters.

funds to complete the project by December 31, 2001, the increase and extension of tax terminates, and the excess funds are to be used to reduce the City's indebtedness on other "Show Me Center" bonds.[4]

Drury's petition contained five counts related to Ordinance 2403: Counts II and IV allege that the ordinance is invalid because it creates municipal indebtedness without a vote of $\frac{4}{7}$ of the people; Count V alleges that the ordinance violates the charter's clear title provision; Count VII alleges that the ordinance violates the charter and State law because it taxes a matter beyond the power of the council to tax; and Count VIII alleges that the ordinance is an improper emergency ordinance, in violation of the charter. The trial court granted summary judgment for Drury on Count V and for the City on the remaining counts of the petition.

### B. The Ordinance Title Satisfies the City Charter

The Cape Girardeau City Charter, section 3.14(a), contains two provisions regarding the titles of ordinances introduced for passage in the City Council: "Every such ordinance shall be by bill in written or printed form with the subject of the ordinance clearly expressed in its title"; and "No ordinance except those making appropriations of money and those codifying or revising existing ordinances shall contain more than one (1) subject, which shall be clearly expressed in its title." This language is similar to Missouri Constitution article III, section 23, which says that "No bill shall contain more than one subject which shall be clearly expressed in its title, except [certain bills related to state indebtedness] and general appropriation bills, which may embrace the various subjects and accounts for which moneys are appropriated."

Although the trial court found that the title of Ordinance 2403 violated both charter section 3.14 and Article III, section 23 of the Constitution, respondent does not attempt to defend the latter proposition, since this Court has long held that the prohibition in section 23 applies only to bills passed by the General Assembly, not to municipal ordinances.[5] The question of whether the ordinance title violates the charter, however, requires more substantial consideration.

■■■ While Missouri courts have frequently been called upon to invalidate both state and local legislation for violations of the "single subject" and "clearly expressed," principles, they have been reluctant to do so. Challenges based on improper bill titles are disfavored. This reflects not just this Court's traditional respect for the legislative branch and the accompanying presumption that its enactments are constitutional, but also a reluctance to strictly apply procedural rules in a way that might interfere with the functioning of the legislature.[6] Though these

---

4. The parties have informed the Court that this provision has recently been amended by ordinance to extend the deadline to December 31, 2003. Drury suggests that this change renders the present appeal moot, since only the original provision was approved by the voters. Even if Drury were correct that the amended ordinance is invalid, a live dispute would still remain regarding the propriety of tax collection under the original ordinance. Since the amendment does not deprive this Court of jurisdiction, the Court does not consider what effect, if any, this amendment (which is outside the record on appeal) may have on the validity of these ordinances.

5. See Denneny v. Silvey, 302 Mo. 665, 259 S.W. 422, 424 (1924); City of St. Louis v. Liessing, 190 Mo. 464, 89 S.W. 611, 615 (1905); City of Tarkio v. Cook, 120 Mo. 1, 25 S.W. 202, 202 (1894).

6. See, e.g., C.C. Dillon v. City of Eureka, 12 S.W.3d 322, 327 (Mo. banc 2000); Fust v. Attorney General, 947 S.W.2d 424, 427–28

concerns of comity are not necessarily present to the same extent in examining municipal enactments, this Court has nevertheless long been guided by the principle that "[s]ound policy and legislative convenience dictate a liberal construction of the title and subject-matter of enactments to maintain their validity." [7]

■ Bill title requirements such as the Cape Girardeau Charter provision here involve two distinct (albeit related) requirements: "(1) a bill cannot contain more than one subject and (2) the subject of the bill must be clearly expressed in its title." [8] A bill satisfies the single subject requirement if "all provisions of the bill fairly relate to the same subject, have a natural connection therewith or are incidents or means to accomplish its purpose." [9] The "clearly expressed" test serves a similar purpose, but focuses on different elements:

> The 'clear title' provision, like the 'single subject' restriction, was designed to prevent fraudulent, misleading, and improper legislation, by providing that the title should indicate in a general way the kind of legislation that was being enacted. If the title of a bill contains a particular limitation or restriction, a provision that goes beyond the limitation in the title is invalid because such title affirmatively misleads the reader. [10]

Under these principles, Ordinance 2403 is not impermissible multi-subject legislation. Each of the provisions of the ordi-

nance is "closely allied, fit and appropriate, and of similar nature to the subject expressed in the title" of the ordinance—the amendment of the city code relating to the hotel/motel/restaurant tax. [11] It is not fatal, under a single subject analysis, that the title mentions the tax increase, but not the purposes to which it will be put. As this Court has previously held, the imposition of a tax and the purposes to which the revenue will be devoted are sufficiently closely connected to withstand a single subject challenge. [12]

The cases principally relied upon by Drury, *Hammerschmidt v. Boone County*[13] and *ACI Plastics v. City of St. Louis,*[14] are not to the contrary. In *ACI Plastics,* this Court struck down a St. Louis ordinance that put to the voters a question that included two unrelated revenue raising measures, a gross receipts tax of ⅜ of one percent on all sales in the City and a five dollar monthly fee per employee imposed on all employers in the City. [15] The title of the enactment (which essentially repeated the body of the proposal) did not suggest, any more than the bill itself did, any common subject to which each of these facially unrelated provisions might apply. Similarly, in *Hammerschmidt,* the legislature had joined two seemingly unrelated bills—one changing various election procedures and one permitting Boone, Jefferson and Clay Counties to adopt county constitutions. [16] This Court concluded that permitting changes in the county form of gov-

---

(Mo. banc 1997); *Hammerschmidt v. Boone County,* 877 S.W.2d 98, 102 (Mo. banc 1994).

7. *Liessing,* 89 S.W. at 615.

8. *C.C. Dillon,* 12 S.W.3d at 328.

9. *Id.* at 328.

10. *Id.* at 329.

11. *See 508 Chestnut, Inc.,* 389 S.W.2d at 829 (Mo.1965).

12. *See Akin v. Director of Revenue,* 934 S.W.2d 295, 301–02 (Mo. banc 1996).

13. 877 S.W.2d 98 (Mo. banc 1994).

14. 724 S.W.2d 513 (Mo. banc 1987).

15. *Id.* at 515.

16. 877 S.W.2d at 100–101 & n. 1.

ernment did not have a natural connection to the subject of elections and neither furthered that goal nor was a necessary incident to achieving it.[17] Here, the purpose of the tax increase, the tax increase itself and the procedural mechanisms for putting it into place all relate naturally and appropriately to a single subject in a way that the markedly unrelated provisions in *ACI Plastics* and *Hammerschmidt* did not.

■ In evaluating the distinct question of whether the title here clearly expresses the single subject of this legislation, the trial court properly focused on the fact that the title mentions several provisions of the ordinance, but omits the specific uses to which the tax increase will be put. A title that is a list of specific provisions, but fails to be comprehensive, risks offending the core principle of clear title analysis: "The touchstone of the clear title rule is that the bill's title cannot be underinclusive."[18] Recognizing that the prevention of underinclusiveness is the chief concern of clear title analysis, this Court has permitted legislative bodies substantial latitude to employ highly inclusive (that is, quite general) titles[19] and has determined that a title need not list every detail of the bill in order to be appropriately clear.[20] A general title is only impermissible if it is so broad or amorphous that it effectively renders the single subject requirement meaningless or obscures the actual subject of the legislation.[21]

■ With a more specific title, such as that at issue here, however, closer scrutiny is required. The general principle is:

The title may be expressed in a few words, but where it descends to particulars the particulars stated become the subject of the act, which must conform to the title as expressed by the particulars. Where the title goes into such detail as would reasonably lead to the belief that nothing was included except that which is specified then any matter not specified is not within the title. Any such matter beyond the title is void.[22]

Although the title of Ordinance 2403 lists specific provisions of the enactment, it is not so specific that it would cause a reasonable reader to conclude that nothing is contained in the ordinance other than those matters explicitly set forth in the title. In particular, a reader informed in a general way that the provisions of the city code dealing with the hotel/motel/restaurant tax are to be amended (as this title does) would not assume from the few specific provisions included in the title that the ordinance contains no provisions regarding how the increased tax revenues are to be spent. Keeping in mind this Court's traditionally liberal construction of titles in the face of clear title challenges, the title is sufficiently general that it does not misleadingly exclude the spending portions of the ordinance from its subject matter.

The provisions of Ordinance 2403 are sufficiently closely related to the single subject of the bill, which is sufficiently clearly expressed in its title, that the ordinance does not violate city charter section 3.14(a). The judgment of the trial court granting summary judgment to plaintiffs

17. *Id.* at 103.

18. *C.C. Dillon,* 12 S.W.3d at 329.

19. *See, e.g., Akin v. Director of Revenue,* 934 S.W.2d 295 (Mo. banc 1996).

20. *C.C. Dillon,* 12 S.W.3d at 329.

21. *See St. Louis Health Care Network v. State,* 968 S.W.2d 145, 147 (Mo. banc 1998).

22. *508 Chestnut v. City of St. Louis,* 389 S.W.2d 823, 829 (Mo.1965).

on Count V of the petition was therefore erroneous.[23]

## III. Drury's Appeal

■ Drury cross-appeals, arguing that the trial court should have entered summary judgment in plaintiffs' favor on Count III of the petition, which alleges that Ordinance 2465 creates a municipal indebtedness without approval of a super-majority of the electorate, in violation of article VI, section 26(b) of Missouri's Constitution.[24]

### A. Ordinance 2465

Ordinance 2465 was passed by the City Council on December 21, 1998, and authorizes the City manager to execute an agreement with the University pursuant to the Intergovernmental Cooperation Act.[25] Under the agreement, the University agrees to issue bonds in the amount of the City's agreed portion of the performing arts center project. In return, the City agrees (subject to annual appropriation by the city council) to transfer all of the proceeds of the hotel/motel/restaurant tax increase (less the costs of the City's visitors bureau) to the University for the purpose of paying principal and interest on the University's bonds. The City further agrees not to repeal the tax and not to allow the proceeds to go to any other purpose until those bonds are repaid.

### B. The Ordinance Does not Violate article VI, section 26(b) of the Missouri Constitution

Drury argues that this agreement violates article VI, section 26(b):

> Any ... city ..., by vote of the qualified electors thereof voting thereon, may become indebted in an amount not to exceed five percent of the value of the tangible taxable property therein.... For elections referred to in this section, the vote required shall be four-sevenths at the general municipal election day....

Contrary to Drury's contention, however, this Court has long recognized a distinction between the indebtedness that this provision refers to and an executory contract such as that at issue here: "A debt is understood to be an unconditional promise to pay a fixed sum at some specified time, and is quite different from a contract to be performed in the future, depending upon a condition precedent, which may never be performed, and which cannot ripen into a debt until performed."[26] Here, the contract with the University is, at this time, purely executory. Its performance depends on actions by the city council, the University and the State before any unconditional indebtedness arises. The case primarily relied on by plaintiffs, *Grand River Twp. v. Cooke Sales & Service*, is distinguishable since that case involved a completely executed contract, specifically an

---

23. The City also argues that section 3.14(a) does not apply to this ordinance because the ordinance is one "revising" an existing statute. Because we find that section 3.14(a) does not invalidate the ordinance regardless of whether it applies, the Court expresses no opinion on the question of whether the charter provision is applicable here.

24. Drury's only other claim of error is that the trial court erroneously failed to grant his summary judgment motion alleging that Ordinance 2403 was a sales tax passed in violation

of section 94.510, RSMo. Drury concedes that this claim was never raised in the pleadings, and has not cited any authority showing that the trial court is required to decide matters outside the pleadings. The trial court did not err in failing to grant summary judgment on this unpled claim.

25. Sections 70.210, *et seq.*, RSMo 2000.

26. *Saleno v. City of Neosho*, 127 Mo. 627, 30 S.W. 190, 192 (1895).

installment purchase of a piece of machinery that had been delivered.[27] Ordinance 2465 does not create an unconditional debt payable by the City, and the trial court properly entered summary judgment in favor of defendant on Count III of the petition.

### IV. Conclusion

Because the title of Ordinance 2403 did not violate the City Charter's clear title provision, the portion of the trial court's judgment in favor of plaintiffs on Count V of their petition is reversed and the injunction issued against the collection of the tax authorized by that ordinance is vacated. In all other respects the judgment of the trial court is affirmed, and the matter is remanded to the trial court for entry of judgment not inconsistent with this opinion.

HOLSTEIN, WOLFF, BENTON, LAURA DENVIR STITH and PRICE, JJ., and WITT, Sp. J., concur.

LIMBAUGH, C.J., not participating.

27.   267 S.W. 322, 324–25 (Mo.1924).